CHERELYN A. KREMKOW, Plaintiff-Appellee, *v.* GERALD E. KREMKOW, Defendant-Appellant

NO. 12484

(FC-D NO. 127656)

JULY 18, 1988

BURNS, C. J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY BURNS, C. J.

Defendant Gerald E. Kremkow (Gerald) appeals the family court's September 29, 1987 Order for Relief After Order or Decree[1] which denied his August 26, 1987 Motion and Affidavit for Relief After Order or Decree. We affirm.

Gerald and plaintiff Cherelyn A. Kremkow (Cherelyn) were married on March 29, 1977. Cherelyn filed a complaint for divorce on December 3, 1982. A contested trial was held in March 1986. A decree of divorce was filed on August 28, 1986. In relevant part the decree (1) ordered Gerald to pay Cherelyn alimony of $900 per month commencing the first day of the first month after the sale of the residence and continuing for ten years thereafter, subject to the further order of the court; and (2) expressly finally awarded many specifically identified items of personal property to Cherelyn and many others to Gerald.

At the time of the divorce trial in March 1986, Gerald was employed by his corporation, Kremkow Properties Inc. (KPI), which was a joint venturer with HonoFed Development Corp. (HFDC), for the development of 3,000 acres on the Island of Hawaii into a residential ranch theme park called Waikii Ranch. The joint venture was named Waikii Ranch Associates (WRA). HFDC provided the development rights and the financing. Gerald, on behalf of KPI, was the on-site agent of WRA's management committee. WRA paid KPI and KPI paid Gerald $6,000 per month plus certain expenses.

On January 16, 1987 HFDC notified Gerald and KPI that it was terminating WRA. Gerald received his last monthly payment in May 1987.

On June 23, 1987 Gerald and KPI sued HFDC and other related persons and entities for damages caused them by HFDC's failure to perform its obligations to WRA. On the same date, HFDC sued Gerald and KPI for a declaratory judgment that WRA was validly terminated. Pending the outcome of the KPI-HFDC litigation Gerald continued to devote his full time to the project and the litigation.

---

[1] This order denied the relief requested; therefore, it has a misleading title.

Since his receipt of the last monthly payment in May 1987, Gerald has been using his capital resources to meet his expenses. According to him, "[M]y time is so [e]rratic and I just don't have time right now for the details of this lawsuit and full charge of responsibility in another job."

On August 26, 1987 Gerald filed, in this divorce case, a motion seeking relief under Hawaii Revised Statutes § 580-47(d) and Rule 60(b)(1) of the Hawaii Family Court Rules (1982) (HFCR) as follows:

I. For a temporary suspension of his obligation to pay alimony until he is reemployed or resolves his HFDC litigation; and

II. For an express division of specifically identified items of personal property not expressly divided by the divorce decree because the items "were inadvertently left off the list of personal property that [Cherelyn] and [Gerald] compiled".[2] After a hearing on September 14, 1987, the order denying the motion was entered on September 29, 1987.

I.

The first issue is whether the family court abused its discretion when it denied Gerald's request for a "temporary" suspension of his obligation to pay alimony. Our answer is no.

In *Saromines v. Saromines,* 3 Haw. App. 20, 641 P.2d 1342 (1982), we articulated the rule that a party paying court-ordered spousal support is always under a duty to exert reasonable efforts

---

[2] *To Gerald:*

24" bronze antique hibachi (estimated value $1,000)

Four (4) antique China wedding baskets (estimated value $3,000)

One of two (2) Martin & MacArthur koa plant stands (estimated value $800)

Surveyor transit (estimated value $750)

*To Cherelyn:*

All furniture/furnishings in the Guest House except for the table awarded to Cherelyn (estimated value of furniture/furnishings $2,000)

Mosler safe, 12" × 12" × 16" high (estimated value $250)

Six (6) antique light fixtures (estimated value $80 each or $240)

Mink coat (estimated value $2,500)

One of two (2) Martin & MacArthur koa plant stands (estimated value $800)

to maintain his or her ability to pay what he or she has been required to pay and will not be allowed to benefit from the consequences of a violation of that duty.

Here, Gerald decided to continue as an uncompensated full-time employee of KPI after May 1987, gambling on the outcome of the KPI-HFDC litigation. Gerald has not volunteered to do so, but even assuming he is willing to pay Cherelyn her temporarily suspended alimony if the outcome of the litigation is favorable, the question to the family court was whether Cherelyn should be compelled to wait for her monthly alimony payments and to risk not being paid those payments on the outcome of Gerald's KPI-HFDC litigation. In our view, the family court was well within its discretion when it decided that Cherelyn should not be compelled to wait and to assume that risk. In other words, Gerald was required to choose one of two options. Option one: Make himself available for and seek other full-time employment. Option two: Use his capital to pay Cherelyn's monthly alimony while he continued as an uncompensated full-time employee of KPI, gambling on the outcome of the KPI-HFDC litigation. As noted, Gerald chose option two.

## II.

The second issue is whether the family court erred when it denied Gerald's request for an express division of specifically identified items of personal property not expressly finally divided by the divorce decree. Our answer is no.

## A.

All items of property that were not expressly finally awarded by the August 28, 1986 divorce decree were thereby implicitly finally awarded to their legal owner(s). *See De Mello v. De Mello,* 3 Haw. App. 165, 646 P.2d 409 (1982); *Jendrusch v. Jendrusch,* 1 Haw. App. 605, 623 P.2d 893 (1981). The only change in the legal title of the items of property implicitly finally awarded by the August 28, 1986 divorce decree was a change of any tenancies-by-the-entireties and probably any joint-tenancies to tenancies-in-common. *Id.* In all other respects, the legal title of the implicitly finally awarded items was unchanged by the August 28, 1986 divorce decree.

## B.

Thus, the question is whether the family court had authority under HFCR Rule 60(b)(1) to change the August 28, 1986 divorce decree's express and implicit final award of the property of the parties. Our answer is no. HRS § 580-56(d) (1985)[3] provides that "a divorced spouse shall not be entitled to . . . any share of the former spouse's personal estate" in the following three situations:

1. Following the entry of a decree of divorce which does not reserve the final division of the property of the parties. *See De Mello v. De Mello,* 3 Haw. App. 165, 646 P.2d 409 (1982).

2. Following the entry of a decree or order finally dividing the property of the parties to a matrimonial action if the same is reserved in the decree of divorce.

3. Following the elapse of one year after entry of a decree or order reserving the final division of the property of the parties. *See Boulton v. Boulton,* 69 Haw. 1, 730 P.2d 338 (1986).

In this case, the August 28, 1986 divorce decree did not expressly reserve the final division of any property of the parties. Therefore, situation 1 and *De Mello, supra,* are applicable.

## III.

Accordingly, we affirm.

*Daniel S. Ukishima* and *Craig G.H. Yim* on the briefs for defendant-appellant.

*V. Thomas Rice* and *Robin J. Leong* on the briefs for plaintiff-appellee.

---

[3] HRS § 580-56(d) (1985) reads in its entirety as follows:

Following the entry of a decree of divorce, or the entry of a decree or order finally dividing the property of the parties to a matrimonial action if the same is reserved in the decree of divorce, or the elapse of one year after entry of a decree or order reserving the final division of property of the party, a divorced spouse shall not be entitled to dower or curtesy in the former spouse's real estate, or any part thereof, nor to any share of the former spouse's personal estate.