ANN S. TODD, Plaintiff–Appellant, v. HORACE PIKE TODD, Defendant–Appellee

NO. 15409

(FC–D NO. 130099)

JUNE 18, 1992

BURNS, C.J., HEEN, J., AND CIRCUIT JUDGE YIM, IN PLACE OF WATANABE, J., RECUSED

OPINION OF THE COURT BY BURNS, C.J.

This is a divorce case between Ann S. Todd (Ann) and Horace Pike Todd (Horace). Ann died after the entry of the divorce decree

but before the entry of a decree fully and finally distributing all of the property and debts of the parties. Since Ann's death, Ann's interest has been represented by her daughter, Gae Ann Henderson, the personal representative of Ann's estate (Personal Representative).

On May 20, 1991, the family court entered an order (May 20, 1991 Order) that fully and finally distributed all of the property and debts of the parties. Personal Representative appeals the May 20, 1991 Order. We affirm.

## FACTS

The relevant chronology is as follows:

| Date | Event |
| --- | --- |
| Late 1962 | Date of living together (DOLT). |
| 1963 | Horace's prior divorce. |
| May 4, 1965 | Ann's prior divorce. |
| June 12, 1968 | Date of marriage. |
| June 27, 1983 | Date of complaint. |
| April 3, 1989 | Date of completion of evidentiary part of trial (DOCOEPOT). |
| June 26, 1989 | Date of divorce. |
| July 21, 1989 | Ann's Notice of Appeal (No. 13968) filed. |
| November 21, 1989 | Findings of Fact and Conclusions of Law (FOF & COL) filed. |
| February 19, 1990 | Ann died. |
| February 15, 1991 | Judgment on Appeal (dismissing No. 13968 for lack of appellate jurisdiction) filed. |
| May 20, 1991 | Order (finally dividing and distributing the property and debts of the parties) filed. |

June 19, 1991        Ann's Notice of Appeal (No. 15409) filed.

September 13, 1991     FOF & COL filed.

On July 13, 1962, Ann's mother (Mother) died in California. Mother's Last Will and Testament (Will) gave Ann "ONE DOLLAR ($1.00), and no more." It gave most of Mother's estate to a testamentary trust (Trust). The Will named an individual and a corporation as co–trustees. The co–trustees were required to pay out of the Trust's net income for "the care, comfort, maintenance, support and pleasure of " Mother's sister, Keola Lee (Keola). Upon Keola's death, the co–trustees were authorized to pay out of the net income for the "dire need" of Ann and her two children, Lulu and Gae Ann, and the educational needs of Lulu and Gae Ann, as determined by the individual co–trustee. The Trust was to terminate upon the death of Keola and Ann and the fulfillment of the educational needs of Lulu and Gae Ann. Upon its termination, the Trust's remaining assets were to be conveyed to "the Catholic Orphanage in Honolulu."

On June 12, 1970, Ann filed a claim to all of the remainder of the Trust. In a document filed on August 10, 1970, Ann and "ST. ANTHONY'S HOME, also known as the Catholic Orphanage in Honolulu," stipulated to "their respective distributive rights to the remainder of [Mother's] estate on termination of trust[.]" They stipulated that two–thirds of the Trust's remainder was to be distributed to Ann and the remaining one–third was to be distributed to St. Anthony's Home. On April 14, 1971, the First Circuit Court entered a Decree of Distribution of Real Property. It noted that the Trust owned three parcels of land in Waialua, one in Aiea, one in Manoa, one in Lanikai, one in Kahaluu, two in Waikiki, and two in Puna. It ordered that "the terms of the Will notwithstanding, distribution of the remaining trust property upon termination shall be 1/3 thereof to ST. ANTHONY'S HOME and the remaining 2/3 thereof to ANN SEDER TODD[.]"

Keola died on September 25, 1980. On August 10, 1984, the First Circuit Court terminated the Trust. On March 5, 1985, the Trust's assets were allocated and distributed by a stipulated court order. By then, apparently, all that was left were the two Waikiki parcels and the parcels in Aiea, Manoa, and Kahaluu. The Aiea parcel and the two Waikiki parcels were awarded to Ann. The Manoa and Kahaluu parcels were ordered to be sold. Prior to 1986, the individual co–trustee resigned, leaving the corporation as the sole trustee. In 1986, the trustee issued deeds conveying 99–060 Pooholua (Aiea), 1683 Kalakaua Avenue (Waikiki), and 1687 Kalakaua Avenue (Waikiki) to Ann. Both Waikiki parcels were subject to leases scheduled to expire in January 1999. Ann gave St. Anthony's Home a one–year promissory note for $73,729.71 which represented the difference between the net market value (NMV) she actually received and the NMV to which she was enti-tled. The note required Ann to pay interest at eight percent per annum. In 1987, Ann paid the principal and $5,898.37 interest.

In FOF 24, the family court found that the real estate received by Ann from Mother's Trust had the following NMVs at the fol-lowing times:

| Real Estate | DOLT | DOCOEPOT |
|---|---|---|
| 1683 Kalakaua and 1687 Kalakaua (leased fee) | $100,926 | $600,000 |
| 99–060 Pooholua | 28,437 | 227,000 |
| Total | $129,363 | $827,000 |

In COL 5, the family court concluded that $129,363 was a category 1 NMV and $697,637 was a category 2 NMV. When determining the applicable uniform starting point (USP) for the distribution of the various categories of NMVs, the family court credited Horace with one–fourth of the $697,637 category 2 NMV or $174,409 and credited Ann with the remaining $523,228. The family court awarded half of the leased fees of 1683 Kalakaua and

1687 Kalakaua ($300,000 NMV) to Horace and the remaining half of the leased fees, plus all of 99–060 Pooholua ($597,000 NMV), to Ann.

## DISCUSSION
### I.

In this case, we are called upon to harmonize *Eaton v. Eaton*, 7 Haw. App. 111, 748 P.2d 801 (1987), with Hawai'i Revised Statutes (HRS) § 580–56(d) (1985), as interpreted in *Boulton v. Boulton*, 69 Haw. 1, 730 P.2d 338 (1986), and *Magoon v. Magoon*, 70 Haw. 605, 780 P.2d 80 (1989).

In *Eaton*, we noted that Hawai'i divorce cases involve a maximum of four discrete parts: (1) dissolution of the marriage; (2) child custody, visitation, and support; (3) spousal support; and (4) division and distribution of property and debts. We concluded

> that an order which finally decides part (1) is final and appealable when decided even if parts (2), (3), and (4) remain undecided; that parts (2), (3), and (4) are each separately final and appealable as and when they are decided, but only if part (1) has previously or simultaneously been decided; and that if parts (2), (3), and/or (4) have been decided before part (1) has been finally decided, they become final and appealable when part (1) is finally decided.

7 Haw. App. at 118–19, 748 P.2d at 805.

HRS § 580–56(d) (1985) provides as follows:

> Following the entry of a decree of divorce, or the entry of a decree or order finally dividing the property of the parties to a matrimonial action if the same is reserved in the decree of divorce, or the elapse of one year after entry of a decree or order reserving the final division of property of the party, a divorced spouse shall not be entitled to dower or curtesy in the former spouse's real estate,

or any part thereof, nor to any share of the former spouse's personal estate.

In *Boulton*, the Hawai'i Supreme Court concluded that, when the family court simultaneously acquires jurisdiction to finally decide part (1) and part (4), then one year after part (1) is finally decided, HRS § 580–56(d) divests the family court of jurisdiction to decide part (4). In *Magoon*, the Hawai'i Supreme Court concluded that where part (4) was finally decided less than one year after part (1) was finally decided, HRS § 580–56(d) did not divest the family court of jurisdiction to consider and grant a Hawai'i Family Court Rules, Rule 60(b) motion for relief from the part (4) final decision more than one year after part (1) was finally decided.

In this divorce case, the family court finally decided part (1) on June 26, 1989. On July 21, 1989, Ann appealed the family court's decision with respect to part (4). On February 4, 1991, in appeal No. 13968, we entered a Memorandum Opinion concluding that, since the family court did not expressly and/or implicitly award all of the property of the parties, we did not have appellate jurisdiction over part (4). On February 15, 1991, we filed our Judgment on Appeal. The family court's May 20, 1991 Order is its final and appealable order with respect to part (4). On June 19, 1991, in this appeal No. 15409, Personal Representative appealed the May 20, 1991 Order.

Since part (1) was finally decided on June 26, 1989, Personal Representative contends that, pursuant to HRS § 580–56(d) and *Boulton*, the family court's jurisdiction to finally decide part (4) ceased on June 26, 1990, and it did not have jurisdiction to enter its May 20, 1991 Order. In other words, Personal Representative contends that after Ann filed her July 21, 1989 Notice of Appeal of the June 26, 1989 Divorce Decree but before our February 4, 1991 Memorandum Opinion, HRS § 580–56(d) terminated the family court's jurisdiction with respect to part (4). In her view, to the extent that our February 4, 1991 Memorandum Opinion

contemplated further action by the family court, the family court was powerless to take that action. We disagree.

Ann commenced appeal No. 13968 on July 21, 1989, and it was assigned to this court on April 12, 1990. This court entered its Judgment on Appeal on February 15, 1991, more than one year after part (1) of this divorce case was finally decided on June 26, 1989. For various reasons, many appeals take that much time. If Personal Representative's position is valid, most appeals of the family court's decrees finally deciding part (4) of divorce cases will result in the family court's permanent loss of jurisdiction over part (4) before the appeal is decided. If the appellate court vacates and remands the family court's decree for further action with respect to part (4), the family court would be powerless to take that action. We conclude that Personal Representative is wrong.

As a matter of statutory interpretation, we conclude that the time from the filing of a notice of appeal of the family court's decree deciding part (4) to the entry of the appellate court's judgment on appeal is excluded when computing HRS § 580–56(d)'s "one year" period. Since appellate courts have jurisdiction to decide that they do not have appellate jurisdiction, this rule applies also in those cases where the appellate court decides that it does not have appellate jurisdiction.

## II.

The family court's June 26, 1989 Divorce Decree categorized all of Ann's two–thirds interest in the remainder of her mother's Trust as a Category 1 interest that Ann acquired in 1962, when Ann and Horace commenced living together, rather than as a Category 3 interest that Ann acquired (A) on June 12, 1970, the date Ann initiated the court proceedings that resulted in the April 14, 1971 judicial order in her favor; or (B) later. We conclude that Ann's Category 1 or 3 NMV is the NMV either in 1962 or on June 12, 1970 and not later. Ann contends that her Category 1 or 3 NMV

should have been the June 12, 1970 NMV rather than the 1962 NMV used by the family court. However, there is no evidence or offer of proof on the record that the June 12, 1970 NMV was greater than the 1962 NMV. Upon a review of the record, we conclude that Ann has not satisfied her burden on appeal of showing a reversible error on the record.

## CONCLUSION

Accordingly, we affirm the family court's May 20, 1991 Order finally dividing and distributing the property and debts of the parties in this divorce case.

*Peter T. Kashiwa*, *Mark B. Desmarais* and *P. Roy Catalani* (Goodsill Anderson Quinn & Stifel of counsel) on the briefs for plaintiff–appellant Personal Representative.

*Durell Douthit*; and *Harlan Y. Kimura* (Hong Iwai Hulbert & Kawano of counsel) on the brief for defendant–appellee.