103 P.3d 388

**Patricia Lee HIGASHI,
Plaintiff–Appellee,**

v.

**Richard S. HIGASHI, Defendant–
Appellant.**

No. 25354.

Intermediate Court of Appeals of Hawai'i.

Dec. 2, 2004.

Reconsideration Denied Dec. 17, 2004.

Certiorari Denied Jan. 13, 2005.

Diane L. Ho, Wailuku, on the briefs, for plaintiff-appellee.

Georgia K. McMillen, on the briefs, for defendant-appellant.

BURNS, C.J., FOLEY and FUJISE, JJ.

Opinion of the Court by BURNS, C.J.

Defendant–Appellant Richard S. Higashi (Richard or Defendant) appeals from the August 28, 2002 Divorce Judgment entered in the Family Court of the Second Circuit, Judge Eric G. Romanchak, presiding. We affirm in part, vacate in part, and remand for further action in the light of this opinion.

## BACKGROUND

Richard and Plaintiff–Appellee Patricia Lee Higashi (Patricia or Plaintiff) were married on October 25, 1981. When they married, Richard had been employed with the State of Hawai'i Department of Education (DOE) for "over 15 years", and Patricia had been employed with the DOE "about 14 years". Their son (Son) was born in 1982 and their daughter (Daughter) was born in 1984. This divorce case commenced on September 7, 2001.

After a hearing on November 28, 2001, Judge Romanchak orally entered an order, followed by a written order on January 16, 2002, that stated in relevant part as follows:

> 3. The parties are mutually enjoined and restrained from transferring, encumbering, wasting, or otherwise disposing of any of his or her real or personal property, except as necessary, over and above cur-

rent income, for the ordinary course of business or for usual living expenses.

4. The parties shall continue to use all their income available to maintain their joint asset and debt load[.]

On both occasions, Judge Romanchak also ordered each party to pay the installments of specified debts and prohibited any further credit card debt.

The trial was held on July 19 and 22, 2002. In the amended opening brief, Richard states that "[o]n the eve of trial [Richard] dismissed his legal counsel because he could no longer afford him."

At the time of the trial, Son was a junior at Washington State University, in an Air Force ROTC Program which provided tuition and a living stipend. Daughter had just graduated from high school and was scheduled to start at the University of Hawai'i at Manoa in the fall of 2002.

The Divorce Judgment was entered on August 28, 2002. Richard filed a notice of appeal on September 25, 2002. On March 18, 2003, Judge Romanchak entered Findings of Fact and Conclusions of Law (FsOF and CsOL). This appeal was assigned to this court on December 26, 2003.

## CATEGORIZATION CHART

This court has stated as follows:

The Partnership Model requires the family court, when deciding the division and distribution of the Marital Partnership Property of the parties part of divorce cases, to proceed as follows: (1) find the relevant facts; start at the Partnership Model Division and (2)(a) decide whether or not the facts present any valid and relevant considerations authorizing a deviation from the Partnership Model Division and, if so, (b) itemize those considerations; if the answer to question (2)(a) is "yes," exercise its discretion and (3) decide whether or not there will be a deviation; and, if the answer to question (3) is "yes," exercise its discretion and (4) decide the extent of the deviation.

*Jackson v. Jackson,* 84 Hawai'i 319, 332, 933 P.2d 1353, 1366 (App.1997) (footnote omitted). In light of this precedent, the family court should file, as part of and consistent with its other findings and conclusions, a document/chart containing: (a) an itemized list of each of plaintiff's Category 1 and 3 assets/debts, stating (i) the Category 1 and 3 value/amount of each and (ii) the Category 2 and 4 net market value of each asset; (b) an itemized list of each of defendant's Category 1 and 3 assets/debts, stating (i) the Category 1 and 3 value/amount of each and (ii) the Category 2 and 4 net market value of each asset; (c) an itemized list of each of plaintiff's and/or defendant's Category 5 assets/debts stating the net market value of each; (d) an itemized statement of the Partnership Model Division of each of the assets/debts owned/owed at the time of the divorce; (e) an itemized statement of the actual division by the court of each of the assets/debts owned/owed at the time of the divorce; (f) an itemized statement of the specifics of each material difference between (i) the Partnership Model Division and (ii) the actual division by the court; and (g) a statement/explanation of the court's reason(s) for each material difference.

In this case, the court did not file such a document/chart. Based on the Divorce Judgment, the FsOF and CsOL, and Plaintiff's Exhibit 26 in evidence, we prepared the following categorization chart.

| PLAINTIFF'S ITEMS: | CATEGORY 1 | CATEGORY 2 | CATEGORY 5 |
|---|---|---|---|
| 47-632 Hui Kelu Street | | $152,050 [1] | |
| 5 Corners, Ulumalu | $185,000 | $120,000 | |

**1.** On March 18, 2003, the court entered Findings of Fact and Conclusions of Law (FsOF and CsOL). FOF number 34 states as follows:

On the date of marriage, Plaintiff owned an undivided one-half interest in 47–632 Hui Kelu Road, Kaneohe with her daughter from her first marriage .... Title on the property was never altered during the duration of the marriage. On the date of marriage there was a mortgage on the property which was paid off with rental proceeds from the property. After the mortgage was satisfied, the rental monies were contributed to the parties['] joint funds. No joint marital assets were used to pay the mortgage on the property or to upkeep the residence. No evidence was presented as to

| | CATEGORY 3 | CATEGORY 4 | |
|---|---|---|---|
| Hoolai Apartments | 63,632 | | |
| Credit Union | 20,000 | | |
| two cemetery plots | ? | ? | ? |
| Chrysler automobile | 1,000 | | |
| Poamoho Ventures L.P. | $100,000 | | |
| 516 Polulani Place | 133,415 | $ 96,585 | |
| Five Regents, Apt. 2108 | 32,000 | 28,000 | |
| Lopez estate | 4,405 | | |
| 1087 Pookela Road | 20,000 | | |
| TOTALS: | $559,452 | $396,635 | ? |

| DEFENDANT'S ITEMS: | CATEGORY 1 | CATEGORY 2 | CATEGORY 5 |
|---|---|---|---|
| California property | $ 13,000 [2] | | |
| 1978 Corvette | ? | | |
| 626 Mazda | 1,800 | | |
| AR Ventures | 25,000 | | |
| Credit Union | 10,000 | | |
| Hawaiian Electric stock | ? | | |
| Maui Beach Hotel shares | 25,000 | | |
| Higashi Eastern Society [3] | | | $ 8,000 |

| | CATEGORY 3 | CATEGORY 4 | CATEGORY 5 |
|---|---|---|---|
| Pala Circle | $ 50,000 [4] | | |
| TOTALS: | $124,800 | $ 0.00 | $ 8,000 |

## JOINT ITEMS:

the value of Plaintiff's one-half interest on the date of marriage. The current value is $304,100.00.

It appears that the statement "[t]he current value is $304,100.00" applies to the value of the entire property and that the value of Plaintiff's one-half interest is $152,050. It further appears that the court's valuation is based upon Plaintiff's Exhibit 14 in evidence, which is a "Notice of Property Assessment–2001" from the City & County of Honolulu, stating that the total value of the property and improvements is "$304,100".

2. FOF number 35 states as follows:

Defendant owned a lot in California prior to marriage which he purchased for $13,000.00. The current value of the property is $10,000. Title on the property continues to be in Defendant's name alone.

3. According to the record, the Higashi Eastern Society is Defendant's "corporate sole". At the trial on July 19, 2002, the following was stated:

[COUNSEL FOR PLAINTIFF]: [Richard], can you look at 21? Is that a copy of a monthly bank statement for your Bank of America account for that Bank of America Eastern Society account?

[RICHARD]: Correct.

. . . .

[COUNSEL FOR PLAINTIFF]: Okay. Where is this account based?

[RICHARD]: It's in Henderson, Nevada.

. . . .

THE COURT: Can somebody explain to me what a corporate sole is?

. . . .

[RICHARD]: It's a nonprofit, it's a nonprofit entity. It's a nonprofit corporation.

[COUNSEL FOR PLAINTIFF]: It's kind of a tax shield nonprofit organization entity that you form that you put all your assets into to protect it from taxes, as I understand, you—

[RICHARD]: It's more for—it's more for liability in case you get sued that you don't own anything. That's a self-protection of our own personal assets in case you get personally sued. It's in your First Amendment.

. . . .

THE COURT: Okay. We'll just treat it as a separate bank account that's in Nevada.

4. FOF number 27 states as follows:

Defendant received in separate monies during the marriage the following:

a) In the spring of 2001 Defendant received his share of the proceeds of sale from the sale of his parent's residence on Pala Circle, Kahului. His one-half share was $50,000.00 and Defendant received after taxes $36,136.00.

GTE/Verizon and HEI stock [5] — minimal
523 Hiilei Place (marital residence) — $ 700,000

The following are in addition to the above. First are Richard's (a) entitlement to retirement payments from the State of Hawai'i and (b) two $100,000 life insurance policies on the life of "R. Grant" that Richard purchased in 1998 for $41,000 each with some of his retirement funds. At that time, R. Grant was 69+ years old. Richard purchased these policies from "Empire State Viatical, LLC" in New York City. In life expectancy reports prepared for Empire State Viatical, two medical doctors [6] concluded that R. Grant's life expectancy then was three-to-five years, and one medical doctor [7] concluded that it was four-to-five years. Second is Patricia's assets in and future entitlements from the State of Hawai'i retirement system.

JOINT DEBTS:

| | | |
|---|---|---|
| 1st mortgage, Finance Factors | $ 354,666 | |
| 2nd mortgage, Finance Factors | $ 197,470 | |
| Bank of Hawaii Covercheck | $ 6,921 | |
| Bank of Hawaii AMEX | $ 7,800 | |
| First Hawaiian Mastercard | $ 3,146 | |
| Bank of Hawaii D.I. loan | $ 27,759 | (borrowed to pay the Internal Revenue Service (IRS) but Richard did not pay IRS or reasonably account for how the money was spent) |
| American Savings and Loan loan | $ 37,753 | (borrowed to pay IRS but Richard did not pay IRS or reasonably account for how the money was spent) |
| 1992 IRS taxes | $ 73,383 | |
| 1998 IRS taxes | $ 43,185 | |
| 1999 taxes | ? | |
| 2000 taxes | ? | |
| 2001 taxes | ? | |
| Ted Yamamura | $ 750 | |
| Dr. Alan Miyamoto | $ 495 | |
| taxes on Polulani Place | $ 2,502 | |
| Bank of Hawaii (Five Regents) | $ 35,000 | |
| maintenance fees Five Regents AOAO | ? | |
| TOTAL | $ 790,830 | |

## DIVORCE JUDGMENT

The Divorce Judgment states, in relevant part, as follows:

### 3. CHILD MATTERS:

There are two (2) children born of the marriage, both of whom are adults but still dependent on the parties for support and their educational needs....

Both children attend college off the Island of Maui. Both shall maintain their permanent residence with Plaintiff on Maui when not in school. Plaintiff shall be responsible for maintaining the children's residence for them while they are away at school and for providing a home for them when they are home on vacation. As such, Plaintiff shall continue to have custody of the adult children who are dependent on the parties for their support.

### 4. OTHER MATTERS COVERED BY THIS JUDGMENT ARE AS FOLLOWS:

#### a. Child Support:

Because the parties' two children are adults and Defendant is paying for all of the children's educational expense, child support is not an issue and will not be paid to Plaintiff.

---

5. FOF number 41 states as follows:

The parties have GTE/Verizon and HEI stock of minimal value. The stocks are in both parties['] names.

6. Tanya Zangaglia, M.D., and Samir Mostafa, M.D.

7. Shashikant R. Patel, M.D.

b. *Educational Costs:*

Defendant is solely responsible for [the children's] college education expenses to include tuition, books and fees, room and board, transportation (airfare) and all miscellaneous student fees. The parties agree that they shall each use their best efforts in assisting each adult child to obtain student loans, scholarships, or any other reasonable form of financial assistance in order to reduce the adult child's educational costs whenever possible.

c. *Health Care Coverage:*

Defendant shall be responsible for maintaining and paying for the monthly health insurance premiums for [the children] while they are enrolled full-time in an accredited university up to age 23. The parties shall share equally all uncovered medical and dental expenses. In the event Defendant fails to obtain medical/dental coverage for the children, he shall be responsible for all medical and dental expenses incurred by the children.

. . . .

(*l*) *Life Insurance:*

. . . Defendant shall receive as his sole and separate property his two (2) viatricles [sic] with The Canada Life Assurance company. These life insurance policies were purchased with Defendant's retirement monies.

(m) *Retirement:*

Each party shall retain as their sole and separate property all of their individual retirement accounts, including State of Hawai'i Deferred Compensation Plans, Individual Retirement Accounts, annuities and pensions.

Each party shall be taxed on his/her share of the benefits received. . . .

(n) *Other Major Assets:*

. . . .

(5) *Personal Property/Household Furnishings:*

All personal property and household furnishings in the marital residence have been divided between the parties. Each party shall retain the property in their possession with no offset credit to the other.[8]

(Footnote added.)

The Divorce Judgment:

1. Orders the sale of 516 Polulani, Wailuku, Maui, and the application of the net proceeds to payment of a long list of joint debts, and authorizes Patricia to instruct escrow as to which listed debts shall be paid, and in what order.

2. Orders the sale of "2288 Ala Ilima, Apt. # 2108, at the 5 Regents, Aiea, Oahu, Hawai'i[,]" and the distribution of the first $24,899.95 of the net proceeds to Patricia "as a credit for inheritance monies invested into the property. The remaining monies shall be used to pay the parties' joint marital debts . . . . [Patricia] shall be responsible for instructing escrow."

3. Orders the sale of the Los Angeles, California, property and the application of the net proceeds to pay joint marital debts.

The Divorce Judgment awards Patricia the following items of value: (1) the two GTE/Verizon stock accounts; (2) the 1991 Mercury ADSW; (3) the 1998 Volvo; and (4) the marital residence at 523 Hiilei Place, subject to the first and second Finance Factors mortgages. Richard, however, was ordered to pay the monthly payment on the second mortgage "until the Polulani Street lot is sold and monies distributed from escrow or for a period of one year from the filing [which occurred on August 28, 2002] of the Divorce Judgment whichever occurs first." Patricia was also awarded (5) her

---

8. This decision in the Divorce Judgment is contradicted by the court's subsequent FOF number 44 which states as follows:

The parties made several good faith efforts to divide the household and personal property. Defendant made numerous trips to the marital residence to remove his belongings. A hearing on the division on [sic] household and personal property is necessary.

However factual FOF number 44 may be, and however non-factual the related provision in the Divorce Judgment may be, for purposes of finality/appealability, the provision in the Divorce Judgment prevails.

undivided one-half of 47–632 Hui Kelu Street, Kaneohe, Oahu, Hawai'i; (6) her undivided one-sixth interest in 1087 Pookela Road, Makawao; (7) the Ulumalu or Five Corners, Haiku, Maui, Hawai'i property, subject to the Finance Factors second mortgage after (i) the Polulani Street lot is sold and monies distributed from escrow, or (ii) August 28, 2003, whichever occurs first; (8) the Poamoho Ventures investment; and (9) the two cemetery plots.

The Divorce Judgment awards Richard the following items of value: (1) his Higashi Eastern Society Bank of America account; (2) the Hawaiian Electric stock; (3) the 1978 Chevy Pacer; (4) the 1984 Buick; (5) the AR Ventures investment; and (6) his two viatical policies with The Canada Life Assurance Company.

The Divorce Judgment orders that "[e]ach party shall retain as their sole and separate property all of their individual retirement accounts, including State of Hawai'i Deferred Compensation Plans, Individual Retirement Accounts, annuities and pensions."

Richard asserts the following points on appeal:

A. The Court's Findings of Fact Fail to Provide a Valid Basis for Deviating from the Partnership Model Division, and Fail to Equitably Allocate the Children's Education and Health Care Costs[;] and

B. The Court's Conclusions of Law Are Based upon Incorrect Findings, Fail to Apply the Partnership Model Division, and Fail to Equitably Allocate the Parties' Obligations Concerning Child Support.

In the amended opening brief, Richard contends, in relevant part, as follows:

1. "[T]he record reveals a trial in which the court thwarted [Defendant's] presentation of his case";

2(a). "[T]he court failed to follow the Partnership Model Division in this matter because the Judgment awards the lion's share of the marital property to Plaintiff";

2(b). "The central thrust of these FsOF is to lay blame for the parties' financial problems on [Defendant] alone, and provide the basis from which the court could deviate from the Partnership Model Division and issue the Judgment which awarded Plaintiff all the parties' major assets";

2(c). Defendant's position was that "both parties' [sic] jointly contributed to and were responsible for the crushing marital debt"; and

3. "The Court's Conclusions of Law Are Based upon Incorrect Findings, Fail to Apply the Partnership Model Division, and Fail to Equitably Allocate the Parties' Obligations Concerning Child Support."

In his closing argument at trial, Richard stated, in relevant part, as follows:

[W]e made mistakes in our investments. I'm walking out with nothing except my retirement, she's still got all of her things plus her property. But I'm just pleading to the Court that, you know, I think at least I should get something out of—out of the marriage itself besides, you know, just being in debt. I'm using up my retirement as well.

Ultimately, in the amended opening brief, Richard

respectfully requests that this Court vacate those provisions of the Divorce Judgment awarding to [Patricia] as her sole and separate property, with no equalization payment to [Richard], the Hi'ilei house, the Ulumalu property, the parties' GTE/Verizon stock, Poamoho Ventures; the provision of the Judgment ordering the sale of [Richard's] California lot to pay [for] the parties['] joint debts; the provision of the Judgment concerning personal and household property; the provisions of the Judgment ordering that [Richard] alone be responsible for [the children's] education and healthcare costs. Consistent with said order, [Richard] requests that the Court award to him one-half the NMVs [net market values] for marital property categories 2, 4 and 5; and order that [Patricia] share 50/50 the financial responsibility for the parties' children from the date of entry of the Judgment with no offset or credit for child support. In the alternative, [Richard] requests that this Court remand the division and distribution of the property and debts portion of the Divorce Judg-

ment, and the allocation of financial responsibility for the parties' children, to the family court for further proceedings consistent with the Court's decision.

As to the Ulumalu [Five Corners] property, [Richard] respectfully requests that this Court award him one-half the NMV under the Partnership Model Division, or, in the alternative, remand to the trial court the issue of his entitlement to an equalization payment for the interest [Patricia] conveyed to him by adding his name to the title.

(Citations omitted).

With the findings and conclusions challenged by Richard in this appeal printed in bold, the March 18, 2003 FsOF and CsOL state, in relevant part, as follows:

### FINDINGS OF FACT

. . . .

4. The parties are the parents of two children, [Son], a junior at Washington State University and [Daughter], currently a freshman at the University of Hawaii. . . .

5. At the time of the separation and continuously thereafter until the trial in July, 2002 . . . [Daughter] resided with Plaintiff with no child support or contribution from Defendant.

. . . .

**7. On November 27, 2001 Plaintiff filed an Ex Parte Motion seeking exclusive occupancy of the marital residence and return of Plaintiff's 1962 red Chevrolet Corvette which had been removed from the residence by Defendant on a tow truck while Plaintiff was off-island. Both issues were considered at the hearing on November 28, 2001.**

. . . .

9. At the OSC hearing on November 28, 2001, Defendant failed to disclose that he had withdrawn from the Hawaii USA FCU account, which had been used exclu-

sively by Plaintiff, the sum of $2,500 on November 27, 2001. This account was Plaintiff's credit union account funded solely from Plaintiff's payroll deductions. The Court finds that Plaintiff should have a credit of $2,500.

. . . .

11. On April 4, 2002 Defendant filed a Motion to Set the matter for trial and financials with the Court. The hearing was scheduled for April 24, 2002.

12. On April 16, 2002, Plaintiff filed a Motion to Compel Discovery and for Award of Attorney's Fees. The hearing was scheduled for April 24, 2002. The basis of the motion was Defendant's failure to comply with Plaintiff's discovery requests and Defendant's entry into the marital residence occupied by Plaintiff and unauthorized removal of the parties['] records and documents.

. . . .

16. . . . The Court finds that the date of divorce value of AR Ventures is $25,000.

. . . .

**18. At trial, Herbert Hussey the tax sheltered annuities specialist from American Savings Bank testified and presented documentary evidence on the status of the National Annuity account. Defendant had withdrawn funds from the two gift annuity accounts in three installments. On March 1, 2002 Defendant withdrew $5,000, on April 2, 2002 Defendant withdrew $5,000 and on May 29, 2002 Defendant withdrew the remaining funds in the amount of $19,866.65. The total withdrawn was $29,866.65. The value after taxes for early withdrawal was $21,592.14. All funds had been deposited into the two annuity accounts during the marriage. Defendant violated the Court order from the November 28, 2001 Order to Show Cause hearing which specifically enjoined and restrained him from wasting or otherwise disposing of his real or personal property.[9] The withdrawals were made**

---

9. The unqualified statement that "the Court order from the November 28, 2001 Order to Show Cause hearing . . . specifically enjoined and restrained [Defendant] from . . . disposing of his real or personal property" is wrong because it

without notice to Plaintiff. The Court finds that Defendant prematurely withdrew $29,866.65. Defendant received $21,592.14 for that early withdrawal. Defendant's testimony that he used the monies for joint obligations was not credible. Defendant shall be credited with receiving the entire amount in the account or $29,866.65.

19. Defendant testified that he utilized the monies to pay joint marital obligations of the parties. Defendant presented copies of personal checks as an exhibit in an attempt to corroborate his testimony. The Court finds that the checks were not proof of payment of joint obligations. The Court finds that Defendant financially benefited from the monies to the exclusion of Plaintiff. Defendant's testimony was not credible.

20. The Court finds that Defendant deliberately attempted to conceal assets by failing to disclose them. Defendant also devalued his own assets while inflating the value of Plaintiff's. Defendant withdrew monies without regard to the Court's order and used the funds for his own gain.

21. Defendant's financials ... reflect the existence of two American Savings IRA's worth $4,500.00. The Court finds Defendant's testimony that he utilized these monies for joint obligations to be incredible. Defendant received an asset valued at $4,500.

22. The trial was set to commence on Thursday July 18, 2002. When the parties and their attorney's [sic] appeared before the Court. Plaintiff's counsel placed on the record the settlement agreement that had been reached between the parties. Thereafter, Defendant's counsel made an oral motion to withdraw as counsel after being informed by Defendant that he no longer wished to be represented by counsel Guy A. Haywood. The order granting the

withdrawal was filed with the Court on July 25, 2002.

. . . .

26. During the marriage Plaintiff received separate monies as follows:

. . . .

c) Inheritance monies from the Lopez estate in 1995 of $4,405.26.

. . . .

28. The parties purchased jointly a lot a[t] 523 Hiilei Place, Wailuku, Maui and constructed the marital residence on the lot. The purchase and construction was financed by the sale of the previously owned marital residence in Kahului and two mortgages[,] one from Finance Factors with a current balance of $354,665.72. The second mortgage [was] originally financed by First Hawaiian Bank in 1987 and later refinanced with Finance Factors. The second mortgage has a balance due of $197,469.98 and is secured by both the Hiilei property and the Ulumalu Five Corners property. During the 1987 financing, First Hawaiian Bank required additional collateral for the loan. The Ulumalu Five Corners property was added as collateral and Defendant's name was added to the property at the insistence of the bank during the financing process.

. . . .

32. The Five Regents investment is a financial drain on both parties. Foreclosure proceedings were initiated against the parties twice during the pendency of the divorce. At the November, 2001 OSC hearing Defendant claimed that the rents from the unit covered the mortgage payment, therefore there was no need to order either party to be responsible for payment of the mortgage. However, Defendant failed to inform the Court that the maintenance fees that he had been responsible for during the mar-

does not state the exception. The January 16, 2002 order states, in relevant part, as follows:
3. The parties are mutually enjoined and restrained from transferring, encumbering, wasting, or otherwise disposing of any of his or

her real or personal property, except as necessary, over and above current income, for the ordinary course of business or for usual living expenses.

riage were seriously delinquent.[10] The rental proceeds were being collected and applied to the delinquent AOAO maintenance fees rather than the mortgage causing the two notices of foreclosure. Defendant's representations to the Court at the OSC hearing were not credible.

33. During the marriage, Defendant withdrew joint monies in 1998 to pay the maintenance fee arrearage at the Five Regents in the amount of $5,462.42. A cashier's check in the amount of $5,462.42 was found during the discovery process by Plaintiff. Plaintiff attempted to redeem the original check with the bank, but was not allowed to because the check had been purchased by Defendant. The check was left at the bank. Defendant failed to cooperate in the redemption of the original cashier's check and the status of the uncashed cashier's check is unknown due to Defendant's failure to cooperate. The Court finds that Defendant is responsible for redemption of the check and will be credited with its value.

34. On the date of marriage, Plaintiff owned an undivided one-half interest in 47–632 Hui Kelu Road, Kaneohe with her daughter from her first marriage .... Title on the property was never altered during the duration of the marriage. On the date of marriage there was a mortgage on the property which was paid off with rental proceeds from the property. After the mortgage was satisfied, the rental monies were contributed to the parties['] joint funds. No joint marital assets were used to pay the mortgage on the property or to upkeep the residence. No evidence was presented as to the value of Plaintiff's one-half interest on the date of marriage. The current value is $304,100.00.

 . . . .

36. The 516 Polulani Place lot in Wailuku Heights was purchased during the marriage substantially by Plaintiff's inheritance. The title is in both parties['] names. The property is debt free and listed for sale for $230,000.00.

37. Plaintiff inherited a one-sixth interest in 1087 Pookela Road, Makawao, Maui in 1992. . . . The 2001 tax assessed value for the property was $129,500.00.

 . . . .

39. Defendant retired from the Department of Education in October, 2001. He currently receives $3,300.00 tax free [11] monthly in retirement benefits. In addition, Defendant has been working sporadically as a substitute teacher and vice-principal for the Department of Education. Plaintiff is a District Resource teacher with the Department of Education. Prior to the parties['] marriage in 1980, Defendant had been with the State of Hawaii, Department of Education for fifteen years and Plaintiff for twelve years.

40. Defendant currently is collecting his retirement pension. Plaintiff is not retired and has a pension and contributory retirement plan with the State. Plaintiff's plans were not valued. Defendant withdrew his deferred compensation with the State to purchase two Canada Life policies on the life of R. Grant which are valued at $100,000 each. These policies are referred to in the proceedings as the viaticles [sic] and/or Sun Life policies.

 . . . .

44. The parties made several good faith efforts to divide the household and personal property. Defendant made numerous trips to the marital residence to remove his belongings. A hearing on the division on [sic] household and personal property is necessary.

 . . . .

46. The parties borrowed money on three separate occasions to pay the IRS debt. The three loans are the Bank of Hawaii Direct Installment Loan, the

10. This sentence of FOF no. 32 is clearly erroneous.

11. Pursuant to Hawaii Revised Statutes (HRS) §§ 88–91 and 235–7 (1993), Richard's retirement benefits are free from State of Hawai'i taxes. As indicated by HRS § 88–94 (1993), they are not free from United States taxes.

American Savings Bank Installment loan and approximately $40,000.00 of the Finance Factors debt on the Five Corners debt. The loans were made during the marriage and the monies given to Defendant to pay the taxes. Defendant never paid the taxes which are still outstanding. Defendant did not account for how the money was spent.

. . . .

50. [Daughter] was unable to apply for scholarships because of Defendant's failure to complete and submit the parties['] taxes for consideration in her financial aid package. Plaintiff paid all of the necessary deposits for her to enroll at the University of Hawaii. [Daughter's] educational expenses include tuition, books, meal plan and transportation. [Daughter] resides with Plaintiff when she is home.

## CONCLUSIONS OF LAW

. . . .

14. Based on the evidence adduced at trial, the Court concludes that the Defendant's testimony was not credible, at times when that testimony was intended to be self-serving, and the Court further concludes that the Defendant's treatment of financial affairs during and after the marriage was a cause of excess debt and wasting of assets.

15. The settlement put on the record prior to trial by the parties['] counsel, just before the Defendant dismissed his previous counsel, appears to the Court to have been just and equitable in the result it obtained, in view of the evidence; however, Defendant's insistence on having a trial after the settlement was stated on the record negated the viability of the settlement terms, and required the additional costs of a trial.

16. In divorce cases involving the Partnership Model, the transmutation rule (i.e., the conversion of separate property into marital property during marriage by expressed or implied acts) does not apply to transactions between marital partners, as it is inconsistent with the equitable distribution statute,

HRS § 580–47; therefore, when one marital partner conveys property to the other marital partner or to both marital partners, there is no presumption of a gift of the net market value and the marital partner alleging a gift has the burden of proving a gift. A partner investing property in a marital partnership does not thereby gift the invested property to the partners. Each marital partner should be repaid their contributions and also must contribute to the losses. Wong v. Wong, 87 Hawai'i 475, 960 P.2d 145 (1998);

17. The investments of Plaintiff in the assets of the martial [sic] partnership were substantial, and there was no evidence adduced as to a donative intent, or any other evidence supporting a contention that any investment was made as a gift. The Court concludes that Plaintiff did not legally gift any part of the value of any of her assets.

18. Plaintiff's responsibility for the accumulation of losses, characterized as debts, appears by the evidence to have been substantially less than that of Defendant.

19. An ordinary assumption that all valid and relevant considerations would be equal, and in [sic] that in such a case then [sic] Category 2, 4 and 5 NMVs are awarded one-half to each spouse, as set forth in Hussey [v. Hussey], 77 Hawai'i 202,] 207–08, 881 P.2d [1270,] 1275–76 [ (App.1994) ], and the Partnership Model Division, is not a valid assumption in this case.

20. A Family Court may formulate an appropriate method for responding to a party's unilateral reduction of the marital estate. Ahlo v. Ahlo, 1 Haw.App. 324, 328, 619 P.2d 112, 117 (1980).

21. While ordinarily income or increased value of separate property belongs to the marital partnership, and is subject to division, the disparity in this case between the value of separate property and contributions of Plaintiff, and the accumulation of losses and a large debt burden, combined with Defendant's

greater responsibility for causing the accumulation of losses and debts, confounds to a substantial degree the distinct evolution of premarital separate property, marital separate property, and marital partnership property, and requires a just and equitable adjustment of asset distribution that is strongly in favor of the Plaintiff.

22. As was the apparent purpose of the settlement agreement repudiated by the Plaintiff, the first purpose of the property and asset division must be to resolve the liabilities of the parties represented by their substantial debt burden. To that end, the assets of the parties must be liquidated to the extent necessary to reduce the debt.

23. It is the Court's intent to leave the Defendant in a debt-free position with his State of Hawaii pension, Canada Life (viaticles) [sic] valued at $200,000, AR Ventrues, and 1978 Corvette, in tact [sic] after the property division has been accomplished, and to leave the Plaintiff with assets that are comparable to the greater value of her contributions, and with their remaining debt. The division of property is fair and equitable in light of the expenditure of joint money occurring after the separation by Defendant i.e. the National Health Annuity ($29,866.65) and American Savings IRAs ($4,500.00) for which Defendant did not adequately account at trial.

24. Plaintiff brought into the marriage, both before and during, cash of $351,037.26 as well as an undivided one-half interest in the Kaneohe property, an undivided one-sixth interest in the Pookela property and the Ulumalu Five Corners property debt free. Defendant brought into the marriage, both before and during, cash of $60,000.00, Maui Beach stock worth $25,000.00, AR Ventrues, California property worth $13,000 and a 1978 Corvette. The difference in the cash contribution alone[,] including the value of the Maui Beach stock and the California property[,] is a positive cash contribution to Plaintiff of $253,037.26.

25. Defendant's fiscal irresponsibility caused the parties to be left with substantial debt on the date of trial. In order to make Plaintiff partially whole, for what she contributed to the marriage, three assets . . . must be sold to save the balance of the properties. The Five Regents condominium currently has a mortgage debt of $35,000.00 and is listed for sale for $60,000.00. The Wailuku Heights lot (Polulani Place) is debt free and currently listed for $220,000.00. The California lot which is debt free should be sold immediately. The proceeds of all three sales should satisfy the parties' debt loan of approximately $250,984.34.

26. The Ulumalu Five Corners property was brought into the marriage by Plaintiff debt free. The parties constructed the marital residence at Hiilei Place during the marriage. In order to finance Hiilei Place, the parties mortgaged Ulumalu Five Corners. Plaintiff added Defendant's name to the title on Ulumalu solely for the purpose of financing and did not gift a one-half interest to Defendant. The Hiilei property is currently valued at $700,000.00. The net equity on [sic] the property after deducting both the mortgage and the mortgage on Hiilei is $147,864.30. The increased value of Ulumalu since the date of marriage is $120,000.00. The net equity value of the two properties is $267,864.30.

. . . .

28. The Court finds that the award of Hiilei, Ulumalu, Pookela and Kaneohe with the debts thereon to Plaintiff is just and equitable under the totality of the circumstances. The award of these four properties, does not make Plaintiff whole when considering her contributions to the partnership.

29. Plaintiff has stated that she will maintain a home residence for the parties' children while their children pursue a higher education, and will waive any right to child support during that time, and she will waive claims to Defendant's retirement income, if the Defendant pays the children's educational and health insurance costs. Both of the children reside with Plaintiff during vacations from their schooling.

30. Defendant provided the children's health insurance through his employer

while they were minors, and he had the opportunity to continue that coverage after his retirement. The Court, therefore, concludes that Defendant should pay the children's health insurance costs.[12]

31. The parties' son has a scholarship that pays for his tuition and books, and provides a stipend for his needs, while attending Washington State University. The parties' daughter had an opportunity to apply for a scholarship while attending the University of Hawai'i, but was unable to do so because of [sic] Defendant failed to provide tax information for the application. Reasonable expenses paying the children's higher education costs, giving consideration to the availability of scholarship assistance, are a fair offset for Plaintiff's waiver of her rights to child support or funds from Defendant's retirement income.

32. The Court concludes that the Defendant should pay the children's education costs, and that the Plaintiff's rights to child support or any funds from the Defendant's retirement income shall be waived in exchange therefor.

(Footnotes added.)

## DISCUSSION

### A.

Richard contends that "the record reveals a trial in which the court thwarted [Rich-

12. Patricia testified, in relevant part, as follows:

Q. What is your understanding about the children's medical coverage and how that works with the State of Hawai'i plan, medical?
A. We've all been covered as a family under the HGEA medical plan up until this point. As soon as they have the open enrollment then I will move over to the HSTA plan, but I have to wait until then.
Q. When—do you have any idea when the open enrollment is?
A. I think it's December. ... But both of the children have been covered under the HGEA plan up until last year. Because when [Son] turned 18 then he had to move into a different plan.
....
Q. In order to transfer the children when they become 18 from the current plan to this other plan, who has to do the paperwork?

ard's] presentation of his case." Upon a review of the record, we disagree.

### B.

In essence, Richard contends that the court abused its discretion in its division and distribution of the property and debts of the parties.

### 1. Debts

It appears that Patricia's Category 1 and 3 NMV investment in the marital partnership is $559,452 and that Richard's is $110,936.

From the family court's point of view, it appears that, apart from the value of their retirement rights and assets, Patricia is leaving the marriage with an approximate NMV of $902,384, and Richard is leaving the marriage with an approximate NMV of $33,000 plus the following $147,840 pre-divorce receipts:

| $ 2,500 | (FOF no. 9) |
| 29,866 | (FOF no. 18) |
| 4,500 | (FOF no. 21) |
| 5,462 | (FOF no. 33) |
| 27,759 | (FOF no. 46; Bank of Hawaii) |
| 37,753 | (FOF no. 46; American Savings & Loan) |
| 40,000 | (FOF no. 46; Finance Factors) |

Richard did not challenge FsOF nos. 9 and 21. His challenge of FsOF nos. 18 and 33 has no merit. His only challenge to FoF no. 46 is that "[t]he record indicates that the parties borrowed twice to pay the IRS debt." This challenge is supported by the record.

A. Richard.
Q. And why is that?
A. Because it's under his plan, it's under HGEA. I'm HSTA as a teacher, and he's HGEA as an administrator.
Q. Okay. And in [Son's] case, is he currently covered?
A. No.
Q. Can you tell the Court what happened?
A. Well, I mean, he became of age and then they—the Kaiser and also the dental plan, they sent me the paperwork. And, of course, that was all happening during the summer, during the period of time that Richard was ... [moving] from the house. So, I kept giving him the paperwork and he told me: I'll take care of it. And I said okay....
....
Q. Did it ever get done?
A. No.

■ FOF no. 46 does not state when the Bank of Hawaii Direct Installment Loan, the American Savings Bank Installment loan, and the Finance Factors second mortgage debts were incurred or when Richard received and spent the proceeds. It says that these loans "were made during the marriage and the monies given to Defendant to pay the taxes. Defendant never paid the taxes which are still outstanding. Defendant did not account for how the money was spent." COL no. 14 says that "the Court further concludes that the Defendant's treatment of financial affairs during and after the marriage was a cause of excess debt and wasting of assets." COL no. 18 says that "Plaintiff's responsibility for the accumulation of losses, characterized as debts, appears by the evidence to have been substantially less than that of Defendant." COL no. 20 says that "[a] Family Court may formulate an appropriate method for responding to a party's unilateral reduction of the marital estate. *Ahlo v. Ahlo*, 1 Haw.App. 324, 328, 619 P.2d 112, 117 (1980)." COL no. 21 says that

> the disparity in this case between the value of separate property and contributions of Plaintiff, and the accumulation of losses and a large debt burden, combined with Defendant's greater responsibility for causing the accumulation of losses and debts, confounds to a substantial degree the distinct evolution of premarital separate property, marital separate property, and marital partnership property, and requires a just and equitable adjustment of asset distribution that is strongly in favor of the Plaintiff.

COL no. 25 says that "Defendant's fiscal irresponsibility caused the parties to be left with substantial debt on the date of trial."

■ It appears that the court failed to recognize that not all reductions of the dollar value of the marital estate caused by a divorcing party's "fiscal irresponsibility" during the marriage are chargeable to the fiscally irresponsible divorcing party.

■ The following time-periods are relevant: (1) prior to the economic partnership; (2) during the economic partnership; and (3) after the divorce. Time period "(1)" ends and time period "(2)" begins on the earlier of (a) the day of the marriage or (b) the day the parties first commenced their economic partnership that continued when they married.[13] Time period "(2)" ends and time period "(3)" begins on the day of the divorce. Within time period "(2)", the following events are relevant: (a) prior to the time of the divorce; and (b) during the time of the divorce.[14] Depending on the facts, the time of the divorce commences on the earliest of the following dates: (i) the date of the final separation in contemplation of divorce (DOFSICOD)[15]; (ii) the date of the filing of the complaint for divorce; (iii) the date one or both of the parties took a substantial step toward the DOFSICOD that subsequently occurred, or (iv) the date one or both of the parties took a substantial step toward the filing of the complaint for divorce that was subsequently filed.

■ A reduction of the dollar value of the marital estate chargeable to a divorcing party occurs when, during the time of the divorce, a party's action or inaction caused a reduction of the dollar value of the marital estate under such circumstances that he or she equitably should be charged with having received the dollar value of the reduction. As noted in COL no. 20, a chargeable reduction occurred in *Ahlo*. By definition a reduction of the value of the marital estate during the marriage, but prior to the time of the divorce, is not a chargeable reduction.

■ When the court decides that a divorcing party chargeably reduced the dollar value of the marital estate, the court must add the dollar amount of that chargeable reduction to the dollar value of the marital estate and treat that dollar amount as having been

---

13. *Raupp v. Raupp*, 3 Haw.App. 602, fns. 7 & 8, 658 P.2d 329, fns. 7 & 8 (1983).

14. *Hatayama v. Hatayama*, 9 Haw.App. 1, 818 P.2d 277 (1991), must be read and applied in the light of this decision.

15. *Woodworth v. Woodworth*, 7 Haw.App. 11, 15, 740 P.2d 36, 39–40 (1987).

awarded to the divorcing party who caused that chargeable reduction.

### 2. Personal Property

At the conclusion of the evidentiary part of the trial on July 22, 2002, Judge Romanchak stated that "I haven't received any evidence as far as personal property and so I'm not going to be able to decide the issue just because I had assumed that that would not be an issue in this case."

In Richard's August 9, 2002 Defendant's Memorandum Regarding Property Division, Custody and Support, Richard's counsel states, in relevant part, as follows:

5. *Personal Property.* As of the filing of this memorandum, the parties have divided a portion of their inherited properties. The balance of the personal property has not been fairly divided.

The division of the personal property should be ordered by the Court after an inventory. The parties attempted to divide the property, but the meeting resulted in a disagreement.

Plaintiff packed and provided to Defendant those items she chose to give him, but would not allow an inventory of the entire home and would not allow the Defendant access to see what actually was there. This Court should order an inventory by a third person paid for or agreed upon by the parties and if the parties cannot reach any consensus, the property sold and the proceeds divided equally.

The inventory should also include all of the parties['] jewelry and the contents of the safety deposit box at Territorial Savings and Loan, Kahului Branch.

Section 4(n)(5) of the Divorce Judgment copied the relevant part of Patricia's Amended Proposed Divorce Judgment Granting Divorce and states:

*Personal Property/Household Furnishings:*

All personal property and household furnishings in the marital residence have been divided between the parties. Each party shall retain the property in their possession with no offset credit to the other.

The court contradicted this Section 4(n)(5) of the Divorce Judgment when it subsequently entered FOF no. 44 as follows:

The parties made several good faith efforts to divide the household and personal property. Defendant made numerous trips to the marital residence to remove his belongings. A hearing on the division on [sic] household and personal property is necessary.

In light of this confusing record, we vacate both Section 4(n)(5) of the Divorce Judgment and FOF no. 44 and remand the division and distribution of the personal property/household furnishings part of this divorce case for reconsideration and appropriate action.

### 3. Child Support and Educational Expenses

At the time of the trial, Son was a junior at Washington State University in an Air Force ROTC Program that provided tuition and a living stipend. Daughter had just graduated from high school and was scheduled to start at the University of Hawai'i at Manoa in the fall of 2002.

As noted above, the Divorce Judgment states, in relevant part, as follows:

3. *CHILD MATTERS:*

There are two (2) children born of the marriage, both of whom are adults but still dependent on the parties for support and their educational needs....

Both children attend college off the Island of Maui. Both shall maintain their permanent residence with Plaintiff on Maui when not in school. Plaintiff shall be responsible for maintaining the children's residence for them while they are away at school and for providing a home for them when they are home on vacation. As such, Plaintiff shall continue to have custody of the adult children who are dependent on the parties for their support.

4. *OTHER MATTERS COVERED BY THIS JUDGMENT ARE AS FOLLOWS:*

a. *Child Support:*

**Because the parties' two children are adults and Defendant is paying for all of**

the children's educational expense, child support is not an issue and will not be paid to Plaintiff.

b. *Educational Costs:*

Defendant is solely responsible for [the children's] college education expenses to include tuition, books and fees, room and board, transportation (airfare) and all miscellaneous student fees. The parties agree that they shall each use their best efforts in assisting each adult child to obtain student loans, scholarships, or any other reasonable form of financial assistance in order to reduce the adult child's educational costs whenever possible.

(Emphases added.)

FOF no. 50 states as follows:

50. [Daughter] was unable to apply for scholarships because of Defendant's failure to complete and submit the parties['] taxes for consideration in her financial aid package. Plaintiff paid all of the necessary deposits for her to enroll at the University of Hawaii. [Daughter's] educational expenses include tuition, books, meal plan and transportation. [Daughter] resides with Plaintiff when she is home.

CsOL nos. 29, 31 and 32 state as follows:

29. Plaintiff has stated that she will maintain a home residence for the parties' children while their children pursue a higher education, and will waive any right to child support during that time, and she will waive claims to Defendant's retirement income, if the Defendant pays the children's educational and health insurance costs. Both of the children reside with Plaintiff during vacations from their schooling.

31. The parties' son has a scholarship that pays for his tuition and books, and provides a stipend for his needs, while attending Washington State University. The parties' daughter had an opportunity to apply for a scholarship while attending the University of Hawai'i, but was unable to do so because of [sic] Defendant failed to provide tax information for the application. **Reasonable expenses paying the**
children's higher education costs, giving consideration to the availability of scholarship assistance, are a fair offset for Plaintiff's waiver of her rights to child support or funds from Defendant's retirement income.

32. The Court concludes that the Defendant should pay the children's education costs, and that the Plaintiff's rights to child support or any funds from the Defendant's retirement income shall be waived in exchange therefor.

(Emphases added.)

 After a review of the record, we conclude that FOF no. 50 and the first two sentences of COL no. 31 are not clearly erroneous. The loss having occurred during the time of the divorce, it is within the family court's discretion to order Richard to pay the amount of the financial aid package Daughter more probably than not lost because of Richard's failure to provide tax information for the application.

 For the following two reasons, however, we vacate COL no. 32 and the part of COL no. 31 that is quoted above in bold print. First, it appears that the court considered its award to Richard of his retirement rights and assets and its award to Patricia of her retirement rights and assets as offsetting awards of equal values and benefits. Part "4." of the August 28, 2002 Divorce Judgment states:

(m) *Retirement:*

Each party shall retain as their sole and separate property all of their individual retirement accounts, including State of Hawai'i Deferred Compensation Plans, Individual Retirement Accounts, annuities and pensions.

Each party shall be taxed on his/her share of the benefits received. The court shall retain jurisdiction to make an appropriate adjustment if any taxing authority shall hold either party liable for the tax on any or all of the other party's share of the retirement benefits.

If the court is not using all of Richard's retirement income as consideration for awarding Patricia her retirement rights and assets, it must say so and enter additional

relevant findings. If the court is using all of Richard's retirement income as consideration for awarding Patricia her retirement rights and assets, no value remains for the court to also use Richard's retirement income as partial consideration for Patricia's waiver of her alleged right to child support from Richard. Second, in the absence of any relevant findings as to the actual amounts of the children's support and educational costs and of the values being offset or exchanged for them, it is impossible to determine whether a "fair offset" or an equitable "exchange" is actually occurring.

## CONCLUSION

Accordingly, we vacate the following parts of the August 28, 2002 Divorce Judgment:

4. *OTHER MATTERS COVERED BY THIS JUDGMENT ARE AS FOLLOWS:*

a. *Child Support:*

Because the parties' two children are adults and Defendant is paying for all of the children's educational expense, child support is not an issue and will not be paid to Plaintiff.

b. *Educational Costs:*

Defendant is solely responsible for [the children's] college education expenses to include tuition, books and fees, room and board, transportation (airfare) and all miscellaneous student fees. . . .

. . . .

g. *Real Property:*

(1) *523 Hiilei Place, Wailuku:*

Plaintiff is awarded as her sole and separate property the jointly owned real property located at 523 Hiilei Place, Wailuku, Maui, Hawai'i, which real property is the marital residence.

. . . .

(n) *Other Major Assets:*

. . . .

(5) *Personal Property/Household Furnishings:*

All personal property and household furnishings in the marital residence have been divided between the parties. Each party shall retain the property in their possession with no offset credit to the other.

We vacate the following parts of the Findings of Fact entered on March 18, 2003:

32. . . . However, Defendant failed to inform the Court that the maintenance fees that he had been responsible for during the marriage were seriously delinquent. . . .

. . . .

39. Defendant retired from the Department of Education in October, 2001. He currently receives $3,300.00 tax free monthly in retirement benefits. In addition, Defendant has been working sporadically as a substitute teacher and vice-principal for the Department of Education. Plaintiff is a District Resource teacher with the Department of Education. Prior to the parties['] marriage in 1980, Defendant had been with the State of Hawaii, Department of Education for fifteen years and Plaintiff for twelve years.

. . . .

44. The parties made several good faith efforts to divide the household and personal property. Defendant made numerous trips to the marital residence to remove his belongings. A hearing on the division on [sic] household and personal property is necessary.

. . . .

46. The parties borrowed money on three separate occasions to pay the IRS debt. The three loans are the Bank of Hawaii Direct Installment Loan, the American Savings Bank Installment loan and approximately $40,000.00 of the Finance Factors debt on the Five Corners debt. The loans were made during the marriage and the monies given to Defendant to pay the taxes. Defendant never paid the taxes which are still outstanding. Defendant did not account for how the money was spent.

We vacate finding of fact no. 46 because (1) it erroneously reports that the parties borrowed on three occasions to pay the IRS debt when the record indicates that they only borrowed twice for that purpose, and (2) it fails to make the relevant and material distinction between "fiscal irresponsibility" "during the marriage," but not "at the time of the divorce," and "fiscal irresponsibility" "at the time of the divorce," and needs to be reconsidered in the light of this opinion.

We vacate the following parts of the Conclusions of Law entered on March 18, 2003:

14. ... [A]nd the Court further concludes that the Defendant's treatment of financial affairs during and after the marriage was a cause of excess debt and wasting of assets.

15. The settlement put on the record prior to trial by the parties['] counsel, just before the Defendant dismissed his previous counsel, appears to the Court to have been just and equitable in the result it obtained, in view of the evidence; however, Defendant's insistence on having a trial after the settlement was stated on the record negated the viability of the settlement terms, and required the additional costs of a trial.

. . . .

18. Plaintiff's responsibility for the accumulation of losses, characterized as debts, appears by the evidence to have been substantially less than that of Defendant.

19. An ordinary assumption that all valid and relevant considerations would be equal, and in [sic] that in such a case then [sic] Category 2, 4 and 5 NMVs are awarded one-half to each spouse, as set forth in *Hussey,* 77 Hawai'i at 207–08, 881 P.2d at 1275–76, and the Partnership Model Division, is not a valid assumption in this case.

20. A Family Court may formulate an appropriate method for responding to a party's unilateral reduction of the marital estate. *Ahlo v. Ahlo,* 1 Haw.App. 324, 328, 619 P.2d 112, 117 (1980).

21. While ordinarily income or increased value of separate property belongs to the marital partnership, and is subject to division, the disparity in this case between the value of separate property and contributions of Plaintiff, and the accumulation of losses and a large debt burden, combined with Defendant's greater responsibility for causing the accumulation of losses and debts, confounds to a substantial degree the distinct evolution of premarital separate property, marital separate property, and marital partnership property, and requires a just and equitable adjustment of asset distribution that is strongly in favor of the Plaintiff.

. . . .

23. It is the Court's intent to leave the Defendant in a debt-free position with his State of Hawaii pension, Canada Life (viaticles) [sic] valued at $200,000, AR Ventrues, and 1978 Corvette, in tact[sic] after the property division has been accomplished, and to leave the Plaintiff with assets that are comparable to the greater value of her contributions, and with their remaining debt. The division of property is fair and equitable in light of the expenditure of joint money occurring after the separation by Defendant i.e. the National Health Annuity ($29,866.65) and American Savings IRAs ($4,500.00) for which Defendant did not adequately account at trial.

. . . .

25. Defendant's fiscal irresponsibility caused the parties to be left with substantial debt on the date of trial. . . .

. . . .

31. ... Reasonable expenses paying the children's higher education costs, giving consideration to the availability of scholarship assistance, are a fair offset for Plaintiff's waiver of her rights to child support or funds from Defendant's retirement income.

32. The Court concludes that the Defendant should pay the children's education costs, and that the Plaintiff's rights to child support or any funds from the Defendant's retirement income shall be waived in exchange therefor.

(Footnote omitted.)

We vacate conclusions of law nos. 23 and 25 because although not expressly challenged by Richard, he implicitly challenged them,

and both need to be reconsidered in light of this opinion. We vacate conclusion of law no. 23 also because its second sentence is wrong. We vacate conclusion of law no. 25 also because in it, the court failed to make the relevant and material distinction between (a) "fiscal irresponsibility" "during the marriage" but not "at the time of the divorce," and (b) "fiscal irresponsibility" "at the time of the divorce."

We remand for reconsideration of the following issues: (a) the award of 523 Hiilei Place, Wailuku, Maui, Hawai'i to Patricia [16] and (b) the payment of child support and the educational expenses of the children.

In all other respects, we affirm.

16. We specify the award of this asset for reconsideration because it has a sufficient equity to cover whatever the family court's decision may be on reconsideration, it is probable that Patricia continues to own this asset, and we seek to disturb the Divorce Judgment as little as possible.