279 P.3d 11

**Hui Z. CHEN, Plaintiff–Appellee/Cross–Appellant,**

**v.**

**Thomas J. HOEFLINGER, Defendant–Appellant/Cross–Appellee.**

**No. 28808.**

Intermediate Court of Appeals of Hawai'i.

March 9, 2012.

As Corrected March 12, 2012.

Paul K. Hamano, on the briefs, for Defendant–Appellant/Cross–Appellee.

Hui Z. Chen, on the briefs, Pro Se Plaintiff–Appellee/Cross Appellant.

NAKAMURA, C.J., REIFURTH, and GINOZA, JJ.

Opinion of the Court by REIFURTH, J.

The Family Court of the Third Circuit ("Family Court") entered a Divorce Decree on July 17, 2006 ("Decree") dissolving the marriage between Plaintiff–Appellee Hui Z. Chen ("Chen") and Defendant–Appellant Thomas J. Hoeflinger ("Hoeflinger"). This

appeal relates to the subsequent proceedings dividing the parties' property pursuant to Hawaii Revised Statutes ("HRS") §§ 580–47(a) [1] and 580–56 [2].

■ Hoeflinger appeals from the June 18, 2007 Decision ("Decision"), the October 2, 2007 Judgment ("Judgment"), and various other pre-judgment orders issued by the Family Court.[3] Chen filed a cross-appeal, which we deem to have been abandoned.[4]

Hoeflinger argues that this court lacks appellate jurisdiction because (1) there is no final appealable order because the Family Court did not divide all of the parties' property and debts, and (2) the Judgment is void because it was issued after the Family Court's jurisdiction over the parties' property had expired.

In the alternative, Hoeflinger challenges several findings of fact and conclusions of law

1. HRS § 580–47(a) provides, in relevant part:
 **Support orders; division of property.** (a) Upon granting a divorce, or thereafter if ... jurisdiction of those matters is reserved under the decree by agreement of both parties or by order of court after finding that good cause exists, the court may make any further orders as shall appear just and equitable ... (3) finally dividing and distributing the estate of the parties, real, personal, or mixed, whether community, joint, or separate; and (4) allocating, as between the parties, the responsibility for the payment of the debts of the parties whether community, joint, or separate, and the attorney's fees, costs, and expenses incurred by each party by reason of the divorce.
 HAW.REV.STAT. § 580–47(a) (2006).

2. HRS § 580–56 provides, in relevant part:
 **Property rights following dissolution of marriage.** (a) Every decree of divorce which does not specifically recite that the final division of the property of the parties is reserved for further hearing, decision, and orders shall finally divide the property of the parties to such action.
 (b) Following the entry of a decree of divorce in any matrimonial action in which the final division of the property of the parties to such action is reserved for further hearings, decisions, and orders, notwithstanding ... any other provisions of the law to the contrary, each party to such action shall continue to have all the rights to and interests in the property of the other party to such action as provided by chapter 533 and chapter 560, or as otherwise provided by law to the same extent he or she would have had such rights or interests if the decree of divorce had not been entered, until the entry of a decree or order finally dividing the property of the parties to such matrimonial action, or as provided in subsection (d) of this section.
 (c) When a party to a matrimonial action has remarried following the entry of a decree of divorce, in which the final division of the property of the parties is reserved for further hearings, decisions, and orders, but prior to the entry of a decree or order finally dividing the property owned by the parties to that action, notwithstanding the provisions of chapter 533 and chapter 560, the spouse of such remarried party shall have none of the rights or interests in the former spouse's real property or personal estate as provided in chapter 533 and chapter 560, or as otherwise provided by law, until such time as a decree or order finally dividing the property owned by the parties or either of them as of the effective date of the entry of the decree of divorce dissolving his or her prior marriage shall be entered. Upon the entry of a decree or order finally dividing the property of the parties to a matrimonial action in which a decree of divorce has been entered, the spouse of a party to such action who has remarried shall have all of the rights of a spouse as provided by chapter 533 and chapter 560, or as otherwise provided by law, in and to the property of the former spouse vested in such spouse by such decree or order finally dividing the property of the parties or either of them, as of the effective date of the entry of the decree of dissolution of the prior marriage.
 (d) Following the entry of a decree of divorce, or the entry of a decree or order finally dividing the property of the parties to a matrimonial action if the same is reserved in the decree of divorce, or the elapse of one year after entry of a decree or order reserving the final division of property of the party, a divorced spouse shall not be entitled to dower or curtesy in the former spouse's real estate, or any part thereof, nor to any share of the former spouse's personal estate.
 HAW.REV.STAT. § 580–56 (2006).

3. The Honorable Terrence T. Yoshioka presided over all matters except the July 11, 2007 motion to disqualify Judge Yoshioka, over which the Honorable Ben H. Gaddis presided.

4. On October 31, 2007, Chen cross-appealed from the Decision and the Judgment, and then filed an amended notice of cross-appeal on November 1, 2007. Chen's counsel withdrew in January 2008. Chen did not file an answering brief or an opening brief, but on March 31, 2008 filed "Hui Z. Chen Response To The Appeal Motion Filed By Thomas J. Hoeflinger And His Attorney Paul K. Hamano on October 2, 2007" ("Response"), which identified no points of error, urged affirmation of the Decision and Judgment, and took issue generally with Hoeflinger's notice of appeal. As a result, we treat the Response as an answering brief and deem Chen's cross-appeal to have been abandoned.

in the Decision and Judgment. He asserts that the Family Court erred by (3) holding that the June 6, 2001 post-nuptial agreement between Chen and Hoeflinger ("Post–Nuptial Agreement") was void *ab initio,* (4) finding that he wasted marital assets and deducting the value of the waste from his post-marital share, and (5) finding that the parties formed a premarital economic partnership.

Hoeflinger also claims that the Family Court erred by (6) denying his motion to disqualify Judge Yoshioka and by allowing other Family Court judges to preside in the case after Judge Yoshioka recused himself and all other Family Court judges, and (7) denying his ex parte motion to expedite the hearing on his motion for reconsideration while granting two continuances, despite the limited time available to complete the case.

We vacate findings of the Family Court related to the waste of marital assets, the enforceability of the parties' Post–Nuptial Agreement, one related adjustment, and one related distribution. We remand for further findings on the issue of the unconscionability of the Post–Nuptial Agreement and for recalculation and redistribution of the assets. We affirm in all other respects.

## I. BACKGROUND

### A. Chronology of the case

Chen and Hoeflinger married in the People's Republic of China ("PRC") on March 1, 1995. The couple moved to Hawai'i in 2000. Chen filed a complaint for divorce in the Family Court on November 4, 2005, and the Decree was issued on July 17, 2006. The Decree explicitly reserved jurisdiction in the Family Court over "all issues pertaining to spousal support and alimony, property division and allocation of debts . . . ."

At trial on the post-Decree issues, Chen testified that she moved in with Hoeflinger in July 1992 and lived with him until he left China for the United States in November 1995. According to Chen, prior to their marriage but while living together, she and Hoeflinger were sexually intimate and she helped pay for the couple's everyday expenses. Evidence was presented that in September 1995, Hoeflinger gave as gifts $29,000.00 to his children and $65,000.00 to three business acquaintances who assisted with business transactions in China. Hoeflinger introduced the notarized Post–Nuptial Agreement, which provided, in relevant part, that Chen would transfer her one-half undivided interest in the marital residence ("Marital Residence") to Hoeflinger in the event of divorce.

The trial on the post-Decree issues ended on March 19, 2007. On June 18, 2007, the Family Court issued the Decision which concluded, in part, that: (1) Chen and Hoeflinger formed a pre-marital economic partnership beginning in July 1992; (2) Hoeflinger wasted $94,000.00 and that value was deductible from Hoeflinger's share of the marital estate ("Finding 12"); (3) Hoeflinger wasted $94,000.00, which, when offset by his $18,348.79 in Category 1 assets, left Hoeflinger responsible for $75,651.21 in wasted assets ("Finding 18"); and (4) the Post–Nuptial Agreement was unenforceable "due to the absence of knowledge as to the scope and value of [Hoeflinger's] assets, and because it was unconscionable" ("Findings 34 and 35").

The Decision contained an order ("Order") which awarded each party "one-half 1/2 of the remaining assets of the parties consisting of $859,791.81 now in [Hoeflinger's] control, and the $31,046.60 in Fidelity Investments Accounts disposed off [sic] or held by [Chen]," subject to certain adjustments. Among other things, the adjustments required Hoeflinger to pay Chen $37,825.00, or approximately one-half of the $75,651.21 of marital waste ("Adjustment 'A'"). The Family Court also ordered Hoeflinger to transfer his title to the Marital Residence to Chen and deducted its value, $368,000.00, from Chen's share of Category 5 assets ("Distribution 'i'"). The Family Court expressly denied "[a]ll other claims, counter-claims, or cross-claims of the parties not specifically addressed[.]"

Hoeflinger filed a motion for reconsideration of the Decision on June 28, 2007 ("Motion for Reconsideration"), which presented several of the arguments raised now on appeal. On July 2, 2007, Hoeflinger filed an ex parte motion to expedite the hearing on the Motion for Reconsideration. The Family Court denied the ex parte motion on July 16,

2007. On October 2, 2007, the Family Court denied the Motion for Reconsideration, stating that it had "lost jurisdiction to hear matters affecting property division issues" after July 17, 2007, pursuant to HRS § 580–56(d) and *Boulton v. Boulton,* 69 Haw. 1, 730 P.2d 338 (1986). The Judgment was filed on the same day.

### B. Motion to disqualify Judge Yoshioka

On July 11, 2007, Hoeflinger filed a motion to disqualify Judge Yoshioka ("Motion to Disqualify") on the grounds that Chen's counsel, Steven J. Kim ("Attorney Kim"), had been appointed as a per diem judge of the Family Court on April 13, 2007. Hoeflinger's counsel had become aware of Attorney Kim's appointment on May 4, 2007.

In conjunction with the Motion to Disqualify, Hoeflinger submitted an affidavit stating his belief that Judge Yoshioka was biased against him. This belief was purportedly based on "[his] own personal feelings obtained from the case"; the Decision, in which Judge Yoshioka stated that Hoeflinger's testimony was not credible; and the fact that "[Chen's] attorney was appointed as a per diem family court judge to serve in the same court and courtroom as Judge Yoshioka." [5] In addition to requesting that Judge Yoshioka be disqualified, Hoeflinger requested that the Order be nullified and that a new judge hear the case de novo.

Judge Yoshioka held a hearing on the Motion to Disqualify on July 20, 2007. At the hearing, Judge Yoshioka explained that he was on a committee that interviewed applicants for per diem judgeships and that the committee submitted recommendations to the chief justice on or about March 19, 2007.

Judge Yoshioka said that he was inclined to deny the motion because Hoeflinger's counsel had received notice of Attorney Kim's appointment long before the Decision was issued and, therefore, waived his right to object. Judge Yoshioka believed that the fact that Attorney Kim was an applicant for a per diem judgeship during the trial did not preclude Judge Yoshioka from hearing the case or rendering a decision.

After further argument, Judge Yoshioka decided that he would not disqualify himself, but that he would conditionally recuse both himself and all third circuit family court judges. Judge Yoshioka qualified his ruling, stating that the Family Court was recused as long as Attorney Kim represented Chen.

Attorney Kim filed a Withdrawal and Substitution of Counsel on August 1, 2007. Deputy Chief Circuit Court Judge Greg K. Nakamura, who intended to assume responsibility for the case upon Judge Yoshioka's conditional recusal of the Family Court, determined that there was no longer any basis for the Family Court to refer the case to a circuit court judge, and so referred the case back to the Family Court for a further hearing on Judge Yoshioka's disqualification.

On August 9, 2007, Judge Ben H. Gaddis presided over a further hearing on the Motion to Disqualify. Judge Gaddis stated his understanding that "Judge Yoshioka was uncomfortable deciding the motion to disqualify[,]" and that his interpretation of the record was that Judge Yoshioka intended that "someone else [would] make the ... determination about whether he was disqualified in light of Mr. Kim's appointment." Judge Gaddis ruled that Judge Yoshioka was not disqualified because HRS § 601–7(b) only applied to affidavits filed before trial, and Attorney Kim's mere appointment as a per diem family court judge would not disqualify a sitting Family Court judge from deciding a pending case. An order denying the Motion to Disqualify was filed on October 2, 2007.

## II. STANDARDS OF REVIEW

### Jurisdiction

"Questions of jurisdiction are considered de novo." *Torres v. Torres,* 100 Hawai'i 397,

---

5. The motion was based on HRS § 601–7(b), which states, in part:

Whenever a party to any suit, action, or proceeding, civil or criminal, makes and files an affidavit that the judge before whom the action or proceeding is to be tried or heard has a personal bias or prejudice either against the party or in favor of any opposite party to the suit, the judge shall be disqualified from proceeding therein. Every such affidavit shall state the facts and the reasons for the belief that bias or prejudice exists and shall be filed before the trial or hearing of the action or proceeding, or good cause shall be shown for the failure to file it within such time.

HAW.REV.STAT § 601–7(b) (1993).

406, 60 P.3d 798, 807 (2002). If we determine that we lack jurisdiction to consider the appeal, dismissal is warranted. *Brooks v. Dana Nance & Co.*, 113 Hawai'i 406, 412, 153 P.3d 1091, 1097 (2007).

### Family court decisions

Generally, the family court possesses wide discretion in making its decisions and those decisions will not be set aside unless there is a manifest abuse of discretion. Thus, [an appellate court] will not disturb the family court's decisions on appeal unless the family court disregarded rules or principles of law or practice to the substantial detriment of a party litigant and its decision clearly exceeded the bounds of reason.

*Fisher v. Fisher*, 111 Hawai'i 41, 46, 137 P.3d 355, 360 (2006) (quoting *In re Doe*, 95 Hawai'i 183, 189–90, 20 P.3d 616, 622–23 (2001)).

### Findings of fact

A trial court's finding of fact is reviewed under the clearly erroneous standard. *Inoue v. Inoue*, 118 Hawai'i 86, 92, 185 P.3d 834, 840 (App.2008). A finding of fact "is clearly erroneous when, despite evidence to support the finding, the appellate court is left with the definite and firm conviction in reviewing the entire evidence that a mistake has been committed." *Id.* A finding "is also clearly erroneous when the record lacks substantial evidence to support the finding. We have defined substantial evidence as credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion." *Id.* at 92–93, 185 P.3d at 840–41 (quoting *Leslie v. Estate of Tavares*, 91 Hawai'i 394, 399, 984 P.2d 1220, 1225 (1999)) (internal quotation marks omitted).

### Conclusions of law

An appellate court reviews a trial court's conclusion of law under the right/wrong standard. *Chun v. Bd. of Trustees of the Employees' Ret. Sys. of the State of Haw.*, 106 Hawai'i 416, 430, 106 P.3d 339, 353 (2005) (quoting *Allstate Ins. Co. v. Ponce*, 105 Hawai'i 445, 453, 99 P.3d 96, 104 (2004)). We will not overturn a conclusion of law "that is

supported by the trial court's [findings of fact] and that reflects an application of the correct rule of law[.]" *Id.* (quoting *Allstate Ins. Co.*, 105 Hawai'i at 453, 99 P.3d at 104) (internal quotations marks omitted). "However, a [conclusion of law] that presents mixed questions of fact and law is reviewed under the clearly erroneous standard because the court's conclusions are dependent upon the facts and circumstances of each individual case." *Id.* (quoting *Allstate Ins. Co.*, 105 Hawai'i at 453, 99 P.3d at 104) (internal quotations marks omitted).

### Sanctions

"[On] appellate review, ... sanctions ... are reviewed for an abuse of discretion." *Webb v. Harvey*, 103 Hawai'i 63, 67, 79 P.3d 681 (App.2003) (quoting *Schonleber v. A Reef Adventure, Inc.*, 97 Hawai'i 422, 426, 38 P.3d 590, 594 (App.2001)).

### Motion to disqualify or recuse a judge

The Hawai'i Supreme Court "has adopted the abuse of discretion standard for reviewing a judge's denial of a motion for recusal or disqualification." *State v. Ortiz*, 91 Hawai'i 181, 188, 981 P.2d 1127, 1134 (1999) (quoting *State v. Ross*, 89 Hawai'i 371, 376, 974 P.2d 11, 16 (1998)) (internal quotation marks and brackets omitted).

## III. DISCUSSION

### A. The Family Court's June 18, 2007 Decision/Order

Hoeflinger argues, in his first and second points of error, that this court lacks jurisdiction to consider his appeal because the Family Court (1) failed to divide and distribute all of the parties' property under its jurisdiction and (2) failed to finally divide all of the parties' property within one year of the divorce decree. We disagree.

#### 1. The Order divided all of the parties' assets and debts

Hawai'i divorce cases involve a maximum of four discrete parts: (1) dissolution of the marriage; (2) spousal support; (3) child custody, visitation, and support; and (4) division of assets and debts. *Eaton v. Eaton*,

7 Haw.App. 111, 118, 748 P.2d 801, 805 (1987) (citing *Black v. Black,* 6 Haw.App. 493, 728 P.2d 1303 (1986)). Part (4) is only final and appealable when the marriage is formally dissolved and when the family court fully and finally divides and distributes the parties' property within its jurisdiction. *Eaton,* 7 Haw.App. at 119, 748 P.2d at 805; *Cleveland v. Cleveland,* 57 Haw. 519, 522, 559 P.2d 744, 747 (1977) (citing *In re Doe I,* 50 Haw. 537, 444 P.2d 459 (1968)) (an order is final and appealable if it "determines the ultimate rights of the parties, with respect to distinct matters which have no bearing on other matters left for further consideration" (internal quotation marks omitted)). The court may divide and distribute property explicitly or implicitly. *See Eaton,* 7 Haw.App. at 119, 748 P.2d at 806.

Hoeflinger points to several assets and debts that he claims the Family Court failed to divide and distribute in the Order. Specifically, he points to several debts, a 1992 Lincoln Town Car, some furniture at Chen's residence, and several items of personal property that were not mentioned in the Decision. Hoeflinger argues that, as a result, the Order does not fully and finally distribute the parties' assets.

■ "When all of the contested property is expressly finally divided, the uncontested property is implicitly finally divided on the basis of record title or possession, as appropriate." *Black,* 6 Haw.App. at 495 n. 3, 728 P.2d at 1305 n. 3; *Kremkow v. Kremkow,* 7 Haw.App. 286, 289, 758 P.2d 197, 199 (1988) ("All items of property that were not expressly finally awarded ... were thereby implicitly finally awarded to their legal owner(s)."). This presumption applies to both "assets and liabilities." *Black,* 6 Haw.App. at 495, 728 P.2d at 1305. Each item addressed by Hoeflinger was either explicitly awarded or was uncontested property implicitly divided and distributed by the Family Court.[6]

#### a. The debts

■ Hoeflinger notes four specific debts that are listed on Chen's Asset and Debt Statement, which he contends were not addressed or distributed by the court. The Hilo Medical Center debt, however is specifically identified by Chen as her personal debt. Each of the three other referenced debts are determinable from the record as being incurred post-decree by Chen. By implication, then, the Family Court decided that Chen was solely responsible for the four debts as her own.

#### b. The Lincoln Town Car

■ Chen claimed that she owned a 1992 Lincoln Town Car and testified at trial that she had been driving the car on a regular basis. The Family Court did not mention the automobile in its Decision or Order. By implication, the Family Court awarded the Lincoln Town Car, which was already in her possession, to Chen.

#### c. The furniture at Chen's residence

■ The Family Court awarded to Hoeflinger "all of [the] furniture/household goods/artwork in his possession and control[.]" By limiting Hoeflinger's award to all of the furniture in his possession and under his control, the Family Court awarded Chen the remainder of the furniture *sub silentio.*

#### d. The various personal effects

■ Hoeflinger points to several personal items in various locations that were not explicitly divided and distributed: tools, several pictures, and several figurines (some of which Chen had already given to him). The Family Court, however, awarded the tools to Hoeflinger. Additionally, Chen agreed at trial that Hoeflinger could take his tools, pictures, and the figurines. In light of Chen's stipulation, the property was uncontested and was implicitly divided in Hoeflinger's favor. *See Kremkow,* 7 Haw.App. at

---

**6.** The Order states that "[e]ach party is awarded one-half 1/2 of the remaining assets of the parties consisting of $859,791.81 now in [Hoeflinger's] control, and the $31,046.60 in Fidelity Investments Accounts disposed off [sic] or held by [Chen]," after certain adjustments are made, leaving each party with one-half of $815,961.32. The statement regarding "one-half 1/2 of the remaining assets" is clearly limited to the sum of the two pecuniary figures and does not apply to any non-liquid assets not mentioned in the Order.

289, 758 P.2d at 199. Thus, the issue was properly resolved.

Therefore, we hold that the Order fully and finally divided and distributed all of the parties' property in compliance with HRS § 580–56(d).[7]

### 2. The Order was timely

■ If a decree or order reserves the final division of property, a family court loses jurisdiction to divide the litigants' property after one year from that decree or order or upon the earlier issuance of a timely order fully dividing the parties' property. HAW. REV.STAT. § 580–56(d) (2006); *Boulton,* 69 Haw. at 5, 730 P.2d at 340. Jurisdiction is retained, however, to subsequently enforce an otherwise timely property division order. *Richter v. Richter,* 108 Hawai'i 504, 506–07, 122 P.3d 284, 286–87 (App.2005). In addition, various other exceptions to the rule have been recognized. *See infra* section III.G.

■ Here, the Decree was filed on July 17, 2006. The Decision, entered on June 18, 2007, did not merely state findings of fact and conclusions of law; it also contained the Order, which divided the parties' property and addressed all remaining claims. Because the Hawai'i Family Court Rules ("HFCR") do not require that a judgment be entered on a separate document, an order may be final and appealable "as long as the appealed order ends the litigation by fully deciding the rights and liabilities of all parties and leaves nothing further to be adjudicated." *See Casumpang v. ILWU, Local 142,* 91 Hawai'i 425, 427, 984 P.2d 1251, 1253 (1999) (no separate document required where such a requirement was not plainly mandated).

While the Family Court ordered Chen's counsel to draft a judgment consistent with the Decision pursuant to HFCR Rule 58, nothing in the HFCR prohibits a family

court from entering its own final order. The October 2, 2007 Judgment, which restated how the property was to be divided, was unnecessary and ultimately redundant. *Cf. Poe v. Haw. Labor Relations Bd.,* 98 Hawai'i 416, 418, 49 P.3d 382, 384 (2002) (if an amendment to a final decree does not have an adverse effect on the "rights or obligations determined by the prior [decree] ... or the parties' right to appeal, the entry of the amended judgment will not postpone the time within which an appeal must be taken from the original decree" (citation omitted)). Therefore, the Family Court fully and finally divided the parties' assets within one year of the Decree in compliance with HRS § 580–56(d).

### B. Post–Nuptial Agreement

The Family Court found that Chen did not enter into the Post–Nuptial Agreement voluntarily and that the agreement was unconscionable. Hoeflinger challenges the Family Court's findings. We agree that the Family Court erred with regard to voluntariness and that the court's findings do not support its conclusion of unconscionability.

■ We begin with the principle that "[a]ll contracts made between spouses, whenever made ... and not otherwise invalid because of any other law, shall be valid." HAW.REV.STAT. § 572–22 (2006). As applied here, HRS § 572–22 "authorizes and requires the family court to order [a] conveyance" that was agreed to in a valid and enforceable marital agreement. *Labayog v. Labayog,* 83 Hawai'i 412, 428, 927 P.2d 420, 436 (App.1996).

■ Whether pre- or post-nuptial, marital agreements are enforceable if the agreement "is *not unconscionable* and has been *voluntarily* entered into by the parties with knowledge of the financial situation of the prospective spouse[.]" *Epp v. Epp,* 80 Hawai'i 79, 85, 905 P.2d 54, 60 (App.1995)

---

7. Hoeflinger cites two cases in support of his position, but they are ultimately not on point. *See Eaton,* 7 Haw.App. at 117–19, 748 P.2d at 804–06 (1987) (order not final where the family court left it to the parties to divide and distribute the remainder of the personal property "in such a manner agreeable to the parties so that each receives approximately equal value"); *Wintermeyer v. Wintermeyer,* 114 Hawai'i 96, 99–100, 157 P.3d 535, 538–39 (App.2006) (order not final where the family court divided unique property equally between the parties without identifying how the division and distribution would be accomplished).

(quoting *Lewis v. Lewis,* 69 Haw. 497, 500–01, 748 P.2d 1362, 1366 (1988)). Involuntariness is shown by evidence of "duress, coercion, undue influence, or any other circumstance indicating lack of free will or voluntariness." *Prell v. Silverstein,* 114 Hawai'i 286, 298, 162 P.3d 2, 14 (App.2007). Unconscionability, on the other hand, encompasses one-sidedness and unfair surprise. *Id.* at 297, 162 P.3d at 13. One-sidedness means that the agreement "leaves a post-divorce economic situation that is unjustly disproportionate." *Id.* (quoting *Lewis,* 69 Haw. at 502, 748 P.2d at 1366). Unfair surprise means "that one party did not have full and adequate knowledge of the other party's financial condition when the [marital] agreement was executed." *Id.* (quoting *Lewis,* 69 Haw. at 502, 748 P.2d at 1366). A contract that is merely "inequitable" is not unenforceable under contract law. *Lewis,* 69 Haw. at 500, 748 P.2d at 1365–66.

### 1. Voluntariness

■ The Family Court found that the Post–Nuptial Agreement "does not contain a disclosure of the parties' respective assets and debts and no written disclosure of [Hoeflinger]'s assets and debts was given to [Chen]." The Family Court further found that "based upon the relationship of the parties, and [Hoeflinger]'s independent business dealings (e.g., Duntip Industrial, Inc.), that [Chen] was not fully aware of the scope and value of all of [Hoeflinger]'s assets." The court concluded that the Post–Nuptial Agreement was unenforceable because Chen did not enter into the agreement voluntarily "due to the absence of knowledge as to the scope and value of [Hoeflinger]'s assets[.]"

Hoeflinger argues that, among other things, the Family Court erred because Chen's knowledge of Hoeflinger's financial situation was irrelevant to the issue of voluntariness and there is no other evidence supporting the conclusion that Chen's assent was not voluntarily given. We agree that if Chen lacked knowledge of Hoeflinger's financial condition, it speaks to unconscionability, not the voluntariness of her acceptance. *See Prell,* 114 Hawai'i at 297, 162 P.3d at 13. In

sum, the Family Court's finding that Chen lacked knowledge of Hoeflinger's financial condition does not support its conclusion that Chen's assent to the Post–Nuptial Agreement was involuntarily given.

### 2. Unconscionability

■ As an alternative basis for unenforceability, the Family Court held that the Post–Nuptial Agreement was unconscionable because "in the event of a divorce, it compelled [Chen] to relinquish her interest in the parties' marital residence which is the single most valuable asset[ ] of the marriage. The residence which is valued at $368,000.00 is equivalent to 41% of all the Category 5 assets ... available for distribution."

Hoeflinger argues that (1) the Family Court utilized the value of the Marital Residence at the time of trial in its unconscionability analysis instead of the Marital Residence's value at the time of the execution of the Post–Nuptial Agreement, (2) Chen had substantial assets at the time of the Post–Nuptial Agreement, (3) lack of full awareness "of the scope and value of all of [Hoeflinger]'s assets" is not the same thing as "full and adequate knowledge of the other party's financial condition," and (4) Chen had actual knowledge of Hoeflinger's financial condition.

"[T]he issue of unconscionability of a provision governing division of property in a premarital agreement should be evaluated at the time the agreement was executed." *Prell,* 114 Hawai'i at 297, 162 P.3d at 13 (quoting *Lewis,* 69 Haw. at 507, 748 P.2d at 1369). The Marital Residence was appraised to be $379,000 as of September 14, 2006. Nothing indicates that this was the value of the Marital Residence on or about June 6, 2001, the date the parties signed the Post–Nuptial Agreement. It is unclear what the value of the Marital Residence was as of June 6, 2001. Therefore, the Family Court's reliance on the September 14, 2006 appraisal was in error. Given the lack of any other findings or conclusions on point, we cannot determine whether the Post–Nuptial Agreement is too one-sided without further findings or conclusions by the Family Court. *See Lewis,* 69 Haw. at 504, 748 P.2d at 1368 (further pro-

ceedings necessary when the record unclear on the issue of one-sidedness).[8]

Similarly, it is not clear whether the record supports the Family Court's finding that Chen was "not fully aware of the scope and value of all of [Hoeflinger]'s assets." This finding in and of itself is vague, and the Family Court did not apply it to the issue of unconscionability. The Family Court failed to explain how "the relationship of the parties[ ] and [Hoeflinger]'s independent business dealings" establish that Chen lacked knowledge of Hoeflinger's financial condition. Consequently, we are unable to determine on what basis this finding was made, how it relates to the unconscionability issue, and whether it was clearly erroneous for the court to make it. Due to the lack of clarity on the issue of unconscionability, we vacate Findings 34 and 35 of the Decision, and Distribution "i" of the Order, and remand for more definite findings and conclusions and, if necessary, redivision and redistribution of the parties' property.[9]

## C. Waste of marital assets

■ Hoeflinger argues that the Family Court erred in finding that Hoeflinger wasted marital assets in September 1995 and by deducting the value of the waste from Hoeflinger's post-marital share.

■ Waste of marital assets is chargeable to a divorcing party "when, during the time of the divorce, a party's action or inaction caused a reduction of the dollar value of the marital estate under such circumstances that he or she equitably should be charged with having received the dollar value of the reduction." *Higashi v. Higashi*, 106 Hawai'i 228, 241, 103 P.3d 388, 401 (App. 2004). "By definition a reduction of the value of the marital estate during the marriage, but prior to the time of the divorce, is not a chargeable reduction." *Id.; cf. Schiller v. Schiller*, 120 Hawai'i 283, 298–303, 205 P.3d 548, 563–68 (App.2009) (family court has wide

discretion to determine post-separation wasting of assets).

Here, Chen filed the complaint for divorce on November 4, 2005. The Family Court charged Hoeflinger with depleting the marital estate by $94,000 through gifts to his children and business connections in September 1995, more than ten years before Chen filed for divorce. Because the purported waste occurred prior to the time of divorce, the Family Court erred by deducting the value of such waste from Hoeflinger's marital share. Therefore, we vacate Adjustment "A" of the Order, and Findings 12 and 18 of the Decision, to the extent that they pertain to the wasting of assets. We remand for recalculation and redivision of the assets consistent with our holding.[10]

## D. Premarital economic partnership

Hoeflinger contends that the Family Court's conclusion that the parties had a premarital economic partnership prior to their official marriage on March 1, 1995 was erroneous, arguing that (1) the Family Court erred in finding that Chen and Hoeflinger formed a premarital economic partnership; (2) Chen violated HFCR Rule 94(a) because she never raised the issue of a premarital economic partnership in her position statement filed on May 19, 2006; (3) because cohabitation is illegal in the PRC, the Family Court was "precluded from applying Hawai'i's premarital cohabitation law to an event that occurred in PRC"; and (4) he was still married to someone else during a part of the premarital economic partnership.

### 1. Findings of fact supported the conclusion

■ A premarital economic partnership "occurs when, prior to their subsequent marriage, a man and a woman cohabit and apply their financial resources as well as their individual energies and efforts to and for the benefit of each other's person, assets, and

---

8. The value of Chen's assets on June 6, 2001 is also relevant to the issue of one-sidedness.

9. The Family Court has jurisdiction to redivide and redistribute the parties' assets on remand. See our discussion in section III.G. *infra.*

10. As stated earlier, the Family Court has jurisdiction to redivide and redistribute the parties' assets on remand. See our discussion in section III.G. *infra.*

liabilities." *Helbush v. Helbush*, 108 Hawai'i 508, 515, 122 P.3d 288, 295 (App.2005).

The Family Court found that Chen moved into Hoeflinger's residence in July 1992. The Family Court found that while Chen lived with Hoeflinger, "she was employed at a hospital and she utilized her income to pay for the household expenses such as food and supplies to which [Hoeflinger] also contributed when [Chen's] income was insufficient." It also found that the parties "were enjoying all of the conjugal benefits as if they were husband and wife" from July 1992.

Thus, we conclude that the Family Court did not err in determining that the parties had established a premarital economic partnership.[11]

### 2. No abuse of discretion

Pursuant to HFCR Rule 94(a), a party shall file "a written statement specifying the [party's] position on all the issues and such other documents as may be required by the court." Hoeflinger argues that the Family Court should not have considered Chen's claim of a premarital economic partnership because Chen failed to address the issue in her position statement. Furthermore, Hoeflinger notes that Rule 94(c), HFCR, provides sanctions for parties failing to comply with the rule.

In her position statement, however, Chen explained that she and Hoeflinger "had a three year courtship prior to the marriage." This was sufficient to put Hoeflinger on notice that the court might explore the extent and nature of their premarital relationship. *See Helbush*, 108 Hawai'i at 513–15, 122 P.3d at 293–95. The Family Court, therefore, did not abuse its discretion in considering the premarital economic partnership issue, and in refusing to sanction Chen under HFCR Rule 94(c) by disregarding her claim of a premarital economic partnership.

### 3. Hawai'i law governs

HRS § 580–47 "gives to the family court the discretion to divide marital property according to what is just and equitable[.]" *Myers v. Myers*, 70 Haw. 143, 148, 764 P.2d 1237, 1241 (1988) (quoting *Cassiday v. Cassiday*, 68 Haw. 383, 388, 716 P.2d 1133, 1137 (1986)) (internal quotation marks omitted). Cohabitation alone does not entitle a cohabitant to property division under HRS § 580–47. *Aehegma v. Aehegma*, 8 Haw. App. 215, 221–22, 797 P.2d 74, 79 (1990). However, a family court can consider the parties' contributions during the premarital economic partnership if "premarital cohabitation matured into marriage." *Helbush*, 108 Hawai'i at 515, 122 P.3d at 294–95; *Malek v. Malek*, 7 Haw.App. 377, 380, 768 P.2d 243, 246 (1989) (the family court's discretion when dividing and distributing property and debts in divorce cases is not restricted to considering only what happened after marriage).

In opposition, Hoeflinger first asserts that because the cohabitation occurred in the PRC, where cohabitation is supposedly illegal, Hawai'i courts must not find the existence of a premarital economic partnership because "[n]either [party] could expect that their alleged premarital cohabitation in the PRC, deemed illegal by the laws of the PRC, would have any meaning to their divorce action in Hawaii." Hoeflinger cites to *Peters v. Peters*, 63 Haw. 653, 634 P.2d 586 (1981) in support of his argument.

In *Peters*, a couple from New York on vacation was involved in a vehicular accident in Hawai'i when Husband, driving a "U–Drive" vehicle, collided with a truck. *Id.* at 655, 634 P.2d at 588. Wife, who was a passenger, sued husband in Hawai'i for personal injuries. *Id.* Under Hawai'i law at the time, spouses were immune from suits brought by their spouses, while New York law allowed a spouse to sue his or her spouse

---

11. Hoeflinger's argument that there was no premarital economic partnership because Chen did not contribute to or enhance the parties' assets is without merit. Under the definition provided in *Helbush*, an economic partnership occurs when the parties "apply their financial resources as well as their individual energies and efforts to and for the benefit of each other's person, assets, and liabilities." 108 Hawai'i 508, 515, 122 P.3d 288, 295 (App.2005). When Chen paid for food and supplies for the benefit of Hoeflinger, it enhanced and supported Hoeflinger. Hoeflinger fails to show error.

for personal injury. *Id.* at 658–60, 660 n. 11, 634 P.2d at 590–91, 591 n. 11. Holding Hawai'i law to be applicable, the Supreme Court stated that because "U–Drive" vehicles leased in Hawai'i are geographically restricted to use in-state, the application of New York law in this case would "contravene the expectations of both insurer and lessor." *Id.* at 666, 634 P.2d at 594.

*Peters* is inapposite. We are not confronted with diametrically opposed laws. Instead, the Family Court may consider the nature of the parties' relationship prior to marriage and, indeed, "all other circumstances of the case." HAW.REV.STAT. § 580–47(a). Whether cohabitation is illegal in the PRC does not affect the Family Court's determination whether prior to their marriage, Chen and Hoeflinger lived together and supported each other financially such that they established a premarital economic partnership under Hawai'i law. It was within the Family Court's wide discretion to use this information to formulate a just and equitable division of the parties' property.

■ Second, Hoeflinger argues that "*if the marriage under China law* of the parties in the PRC is given full faith and credit in Hawaii, the illegality under China law of the parties' premarital cohabitation in the PRC should also be given full faith and credit in Hawaii." Foreign marriages are specifically recognized by statute. *See* HAW.REV.STAT. § 572–3 (2006) ("Marriages between a man and a woman legal in the country where contracted shall be held legal in the courts of this State."). By Hoeflinger's logic, because Hawai'i recognizes PRC marriages, we must also follow all other PRC laws related to marriage. ˙ Hoeflinger cites no support for

his argument, and we hold that it is without merit.

Finally, Hoeflinger argues that "[i]f the [Family Court's] conclusion stands, that a premarital economic partnership can occur even when a party is still married to someone else, it means that a party can be subjected to two divisions of marital property at the same time from different partners."[12] Contrary to Hoeflinger's argument, HRS § 580–47 does not provide for the division of property for mere cohabitation; therefore, Hoeflinger could not be subject to simultaneous divisions of marital property from different partners under the statute. *See Aehegma,* 8 Haw.App. at 221–22, 797 P.2d at 79. In this case, it does not contravene a just and equitable division of property to consider the parties' premarital cohabitation, even though one of the parties might have been legally married to someone else at that time. *See Coney v. Coney,* 207 N.J.Super. 63, 503 A.2d 912 (N.J.Super.Ct. Ch. Div.1985) (property acquired by parties who later married, and who were cohabitating while married to others, constituted property acquired during the marriage and equitably distributed upon divorce). Here, Hoeflinger and his prior wife entered into a Property Settlement effective on January 26, 1993, six months after the Family Court found that Hoeflinger and Chen established a premarital economic partnership commencing in July 1992. There is nothing in the record to suggest, and Hoeflinger does not assert, that any of the property at issue in this case was also subject to the Property Settlement with his prior wife.

For the aforementioned reasons, we hold that the Family Court did not err when it concluded that Chen and Hoeflinger formed a premarital economic partnership beginning in July 1992.[13]

**12.** Hoeflinger argues that while the Family Court found that Hoeflinger's premarital economic partnership with Chen began in July 1992, his previous marriage did not end until December 13, 1993.

**13.** Hoeflinger identifies no practical consequence of the Family Court's conclusion that a premarital economic partnership was established. Indeed, the Family Court in the Decision merely analyzes the facts surrounding the relationship, reaches its conclusion that as a result there was a premarital economic partnership, notes that

"[n]otwithstanding this determination, the Court does not consider the parties' pre-marital economic partnership to warrant a deviation from marital partnership principles[.]" Instead, the Family Court reserves the matter for future consideration as a valid and relevant consideration in the event that error is subsequently determined. Since we conclude that the Family Court did not err in finding a premarital economic partnership, and since we remand the case for further proceedings, it is for the Family Court to consider first whether any variation from marital

E. Motion to disqualify

Hoeflinger contends that the Family Court erred in denying his motion to disqualify Judge Yoshioka, and further erred in allowing Judge Yoshioka to continue participating in the case after he initially conditionally recused the entire Family Court from the case.

Hawai'i courts apply a two-part analysis in disqualification or recusal cases. *State v. Ross,* 89 Hawai'i 371, 377, 974 P.2d 11, 17 (1998). First, courts determine whether the alleged bias is covered by HRS § 601–7, which only pertains to cases of affinity or consanguinity, financial interest, prior participation, and actual judicial bias or prejudice. *Id.*; Haw.Rev.Stat. § 601–7. This first step refers to judicial "disqualification." *See* Hawai'i Revised Code of Judicial Conduct Rule 2.11 Code Comparison (2008) (in Hawai'i jurisprudence, the terms "disqualification" and "recusal" are not synonymous); Report and Recommendation of the Committee to Evaluate Hawaii's Revised Code of Judicial Conduct 1, 7 (April 10, 2008), http://www.state.hi.us/jud/ctrules/CommRptJudJudConduct.pdf ("2008 RCJC Report") ("disqualification" refers to "disqualification pursuant to HRS § 601–7 due to kinship, pecuniary interest, prior involvement, personal bias or prejudice").

Second, if HRS § 601–7 does not apply, courts "may then turn, if appropriate, to the notions of due process ... in conducting the broader inquiry of whether 'circumstances ... fairly give rise to an appearance of impropriety and ... reasonably cast suspicion on [the judge's] impartiality.'" *Ross,* 89 Hawai'i at 377, 974 P.2d at 17 (brackets and ellipses in original) (quoting *State v. Brown,* 70 Haw. 459, 467 n. 3, 776 P.2d 1182, 1188 n. 3 (1989)). A judge who ceases participating because of due-process concerns "recuses" him or herself. 2008 RCJC Report at 7 (under *Ross,* "recusal" refers to "disqualification outside HRS § 601–7 due to the appearance of impropriety").

partnership principles is warranted in light of its

1. The motion was untimely

Under HRS § 601–7(b), a disqualifying affidavit "shall be filed before the trial or hearing of the action or proceeding, or good cause shall be shown for the failure to file it within such time." "[A] party asserting grounds for disqualification must timely present the objection, either before the commencement of the proceeding or as soon as the disqualifying facts become known." *Office of Disciplinary Counsel v. Au,* 107 Hawai'i 327, 338, 113 P.3d 203, 214 (2005) (quoting *In re Water Use Permit Applications,* 94 Hawai'i 97, 122, 9 P.3d 409, 434 (2000)) (internal quotation marks omitted). "Litigants cannot take the heads-I-win-tails-you-lose position of waiting to see whether they win and if they lose moving to disqualify a judge who voted against them.... The requirement of timeliness prohibits knowing concealment of an ethical issue for strategic purposes." *Id.* at 339, 113 P.3d at 215 (quoting *Schurz Commc'ns, Inc. v. Fed. Commc'ns Comm'n,* 982 F.2d 1057, 1060 (7th Cir.1993)) (internal quotation marks omitted).

Here, Hoeflinger's counsel learned that Attorney Kim had been appointed a per diem family court judge on May 4, 2007, after trial had concluded, but before the Decision was issued. Hoeflinger remained silent. Judge Yoshioka issued his Decision, which was adverse to Hoeflinger, on June 18, 2007. Hoeflinger did not file a disqualifying affidavit until July 11, 2007.

Judge Yoshioka noted, before ultimately recusing himself from deciding the disqualification issue, that Hoeflinger's counsel knew about Attorney Kim's appointment before the Court issued the Decision, but failed to raise the issue and had thereby waived the objection. Judge Gaddis ultimately held that the affidavit was untimely because it needed to be filed before trial.

Judge Gaddis failed to explain that a disqualifying affidavit may be filed after trial for good cause, and that Hoeflinger's counsel did not learn of Attorney Kim's appointment until after trial. But Judge Gaddis generally recognized a fact that is crystal clear from the record: the affidavit was filed far too

finding of a premarital economic partnership.

late. It took an adverse decision (and over two months) for Hoeflinger to file an affidavit alleging bias. That is exactly what a party is prohibited from doing. Therefore, we affirm Judge Gaddis's order denying the Motion to Disqualify. *See State v. Koch*, 107 Hawai'i 215, 224, 112 P.3d 69, 78 (2005) (no error if the trial court reaches the right result for the wrong reason).

### 2. Personal bias or prejudice

■ As an alternate basis for denying the Motion to Disqualify, Judge Gaddis held that the fact of Attorney Kim's appointment was insufficient to disqualify the presiding family court judge from deciding the case even though Attorney Kim participated at trial.

■ The most important document in any motion to disqualify based on personal bias is the party's affidavit. *See Schutter v. Soong*, 76 Hawai'i 187, 205, 873 P.2d 66, 84 (1994). If a party to a suit files an affidavit that the judge "has a personal bias or prejudice either against the party or in favor of any opposite party to the suit, the judge shall be disqualified from proceeding therein." HAW.REV.STAT. § 601–7(b).

■ Disqualification is not automatic simply because a party files an affidavit. The affidavit must "state the facts and the reasons for the belief that bias or prejudice exists[,]" *id.*, and "must be sufficient for a sane and reasonable mind to fairly infer bias or prejudice." *Jou v. Schmidt*, 117 Hawai'i 477, 483, 184 P.3d 792, 798 (App.2008) (quoting *Glover v. Fong*, 39 Haw. 308, 314–15 (Haw.Terr.1952)) (internal quotation marks omitted).

Hoeflinger attested to his belief that Judge Yoshioka has a personal bias or prejudice against him. He stated that those beliefs were based on his own unspecific "personal feelings" that became clear when he learned that Attorney Kim was appointed as a per diem family court judge. He contended that it was clear that Judge Yoshioka was biased against him because the judge found his testimony "not credible." Hoeflinger further argued that Attorney Kim's appointment "created an ongoing personal relationship" between Attorney Kim and Judge Yoshioka,

irrespective of how much Attorney Kim and Judge Yoshioka actually interacted or socialized as judicial colleagues.

Hoeflinger's "own personal feelings," however, are not facts or reasons supporting his belief. The fact that Judge Yoshioka found Hoeflinger to be not credible does not evidence bias against him. *See Haw.-Pac. Venture Capital Corp. v. Rothbard*, 437 F.Supp. 230, 234 (D.Haw.1977) (bias "cannot be founded upon a judge's findings of fact and expression of judicial opinion arising out of the very case in which his disqualification is sought"). Hoeflinger's speculative belief that Judge Yoshioka was biased against him because Attorney Kim was appointed a per diem family court judge while the case was under consideration is all that remains. Hoeflinger cites no evidence tending to show bias on the part of Judge Yoshioka. Therefore, Judge Gaddis did not abuse his discretion in finding that disqualification was improper.

### 3. Appearance of impropriety

■ Because HRS § 601–7 does not apply, we must determine whether due process required recusal at the time of Attorney Kim's appointment to the bench. *Ross*, 89 Hawai'i at 377, 974 P.2d at 17. The circumstances here did not give rise to the probability of unfairness or the temptation for the judge to forget the applicable burden of proof. *Id.* at 379, 974 P.2d at 19. Hoeflinger's claim does not rise to a constitutional dimension. *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 829, 106 S.Ct. 1580, 89 L.Ed.2d 823 (1986) (stating that "only in the most extreme cases would disqualification on [the basis of allegations of bias or prejudice against a judge] be constitutionally required"). The argument here is without merit.

### 4. Prospective recusal

Hoeflinger argues that "Judge Yoshioka initially *recused himself* and the entire family court from the case," which precludes "anyone in the family court from acting in the case." Although Judge Yoshioka's ruling is somewhat confusing, he recused himself from the case for all matters moving forward,

stating that "the Court is gonna recuse itself, and it's gonna recuse all family court judges" with relation to "issues relating to the motion for reconsideration because of Mr. Kim's participation as ... counsel for Miss Chen." Judge Yoshioka cleanly distinguished the act of recusal from disqualification: "We're [(Judge Yoshioka and the Family Court)] not disqualified—I don't feel I'm disqualified because ... as Mr. Kim pointed out, urn, there are maybe deficiencies in the, uh, affidavit, but I don't feel it's necessary to rule on that at this point. We're recusing—the Family Court is recusing itself." Therefore, the question presented is whether a judge who recuses himself from a case may later preside after the basis for recusal is removed.

As an initial matter, because the Decision and Order were entered before the Family Court conditionally recused itself, Hoeflinger's prospective recusal argument, even if correct, would not invalidate the Decision or Order. However, because this issue has implications on remand, it remains ripe for adjudication on appeal.

 Under the common law, disqualification because of a "relationship to a litigant or attorney[ ] may be removed after the inception of the action or proceeding with the effect of rendering it proper for the judge to reassume jurisdiction in the case." W.W. Allen, Annotation, *Disqualification of Judge in Pending Case as Subject to Revocation or Removal*, 162 A.L.R. 641 (1946). And this remains the majority position today. *See Luce v. Cushing*, 177 Vt. 600, 868 A.2d 672, 677–78 (2004), and cases cited therein. "In the absence of a statute to the contrary, where a timely affirmative showing is made that there was no valid disqualification or the disqualification has been removed, a judge who entered an order that he or she is disqualified may reassume jurisdiction over the matter," if the judge revokes the disqualification order. 46 AM.JUR. 2d *Judges* § 221 (2006).

 Due process requires that a judge disqualify himself "where circumstances g[i]ve rise to the 'probability of unfairness' and 'temptation to the judge to forget'" the applicable burden of proof. *Ross*, 89 Hawai'i at 379, 974 P.2d at 19 (quoting *Brown*, 70 Haw. at 466, 467, 776 P.2d at 1187–88). This requirement is based on the Hawai'i Revised Code of Judicial Conduct [14] "and the general principle that justice must satisfy the appearance of justice." *Id.* (quoting *Brown*, 70 Haw. at 467, 776 P.2d at 1188) (internal quotation marks omitted). However, as stated earlier, "only in the most extreme cases would disqualification on [the basis of allegations of bias or prejudice against a judge] be constitutionally required." *Aetna Life Ins. Co.*, 475 U.S. at 829, 106 S.Ct. 1580. Instead, due process is violated only in those circumstances "in which experience teaches that the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable." *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 877, 129 S.Ct. 2252, 2259, 173 L.Ed.2d 1208 (2009) (quoting *Withrow v. Larkin*, 421 U.S. 35, 47, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975)) (internal quotation marks omitted).

 Due process does not prohibit a judge from reentering the case after recusal if the condition causing his or her recusal is removed from the case. If the prejudicial barrier is explicitly stated in the record to be the sole basis for recusal, the elimination of that barrier removes the probability of unfairness and the temptation to decide the case on anything other than the merits. The judge is no longer tainted: the judicial system "rests on the premise that 'the law will not suppose a possibility of bias or favour in a judge, who is already sworn to administer impartial justice, and whose authority greatly depends upon that presumption and idea.'" *Ross*, 89 Hawai'i at 381, 974 P.2d at 21 (quoting *Aetna Life Ins. Co.*, 475 U.S. at 820, 106 S.Ct. 1580).

---

**14.** The Hawai'i Revised Code of Judicial Conduct in effect in 2007 was not authority upon which parties could demand recusal or overturn a court order or judgment. *See Ross*, 89 Hawai'i at 379 n. 7, 974 P.2d at 19 n. 7; Hawai'i Revised Code of Judicial Conduct, Preamble (1992) (stating that the purpose of the Code is to provide guidance).

364

Here, Judge Yoshioka explicitly conditioned recusal on Attorney Kim's continued representation of Chen. Once Attorney Kim withdrew ten days later, there was no longer any continuing basis for the Family Court's recusal. The concerns justifying recusal—probability of unfairness and temptation to disregard legal standards of proof—no longer existed. Likewise, any appearance of impropriety necessarily vanished. Judge Nakamura ceded whatever control he had over the case back to the Family Court. Judge Gaddis decided the motion. We determine no basis upon which Judge Yoshioka and the Family Court's subsequent participation in the case violated due process. *Cf.* 46 AM.JUR. 2d *Judges* § 220 (2006) ("A judge who recuses himself or herself due to a friendship with counsel for one of the parties may revoke the recusal and reenter the case where the attorney withdraws from the case[.]").

The two cases that Hoeflinger cites in support of his position are unpersuasive.[15] In *El Fenix de Puerto Rico v. The M/Y JOHANNY*, 36 F.3d 136 (1st Cir.1994), a judge disqualified himself pursuant to 28 U.S.C. § 455(a).[16] 36 F.3d at 139. After defendants filed a motion for reconsideration, the judge vacated the recusal order. *Id.* While holding that the motion for disqualification under § 455(a) should have been denied in the first instance, the appellate court reversed, stating that "a trial judge who has recused himself 'should take no other action

in the case except the necessary ministerial acts to have the case transferred to another judge.'" *Id.* at 140–41 (quoting what is today 13D CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3550 (3d ed. 2008)). The First Circuit Court of Appeals reasoned that its decision was influenced heavily by the litigants' constitutional entitlement to an unbiased adjudication and the public's perception of the integrity of the judicial process. *Id.* at 142 n. 7. While these values are legitimate due process concerns, we see no reason to adopt a prophylactic per se rule in derogation of the common law without a statutory basis.[17] Therefore, we find no error.

**F. Motion to expedite**

■ Hoeflinger's final point of error states that the Family Court erred by denying Hoeflinger's ex parte motion to expedite a hearing on his Motion for Reconsideration and by granting two continuances. Hoeflinger fails to present an argument in support of his seventh point of error; thus, the point is waived. Haw. R. App. P. 28(b)(7).

**G. The Family Court's jurisdiction on remand**

Restrictions imposed by HRS § 580–56(d) on the family court's jurisdiction to issue post-decree property distribution orders[18]

---

**15.** *State v. Clarke*, 857 So.2d 599 (La.Ct.App. 2003), is grounded in the Louisiana Code of Criminal Procedure and, as a result, bears little resemblance to this case.

**16.** Pursuant to 28 U.S.C. § 455(a), "Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." This language is, for all intents and purposes, a statutory codification of former Canon 3E(1), in effect in 2007, which stated, "A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned[.]"

**17.** Furthermore, the First Circuit position is not universally accepted in the federal circuit courts. *See United States v. Lauersen*, 348 F.3d 329, 338 (2d Cir.2003) ("There is no reason to prohibit a judge from reconsidering a recusal decision, at least in the absence of transfer of the case to another judge."); *United States v. Dalfonso*, 707 F.2d 757, 759 (3d Cir.1983); *Central Teleph. Co.*

*of Va. v. Sprint Comm. Co. of Va.*, No. 3:09cv720, 2011 WL 6178652, at *3–4 (E.D.Va. Dec.12, 2011) (judge's continued participation appropriate when no recusal order was entered and the case was not reassigned).

**18.** We have previously explained the effect that HRS § 580–56(d) has on the family court's jurisdiction to divide and distribute the parties' property:

HRS § 580–56(d) provides that "a divorced spouse shall not be entitled to ... any share of the former spouse's personal estate" in the following three situations:
 1. Following the entry of a decree of divorce which does not reserve the final division of the property of the parties. *See De Mello v. De Mello*, 3 Haw.App. 165, 646 P.2d 409 (1982).
 2. Following the entry of a decree or order finally dividing the property of the parties to a matrimonial action if the same is reserved in the decree of divorce.

have bedeviled divorcing parties, trial judges, and the appellate courts since the provision was amended in 1973. *See Boulton*, 69 Haw. at 6–7, 730 P.2d at 341 (Wakatsuki, J., dissenting). Nevertheless, the specific situation that we consider—the family court's jurisdiction upon remand from an appellate court of a timely-decided property division order—has rarely been encountered and never to our knowledge explicitly addressed.

■ The statutory provisions central to the question read:

An order as to the custody, management, and division of property and as to the payment of debts and the attorney's fees, costs and expenses incurred in the divorce shall be final and conclusive as to both parties subject only to appeal as in civil cases. The court shall at all times, including during the pendency of any appeal, have the power to grant any and all orders that may be necessary to protect and provide for the support and maintenance of the parties and any children of the parties to secure justice, to compel either party to advance reasonable amounts for the expenses of the appeal including attorney's fees to be incurred by the other party, and to amend and revise such orders from time to time.

Haw.Rev.Stat. § 580–47(b).

Following the entry of a decree of divorce, or the entry of a decree or order finally dividing the property of the parties to a matrimonial action if the same is reserved in the decree of divorce, or the elapse of one year after entry of a decree or order reserving the final division of property of the party, a divorced spouse shall not be entitled to dower or curtesy in the former spouse's real estate, or any part thereof, nor to any share of the former spouse's personal estate.

Haw.Rev.Stat. § 580–56(d). The question here is whether HRS § 580–56(d) divests the family court of jurisdiction to issue further property distribution orders in response to this order of remand. Our answer is no.

3. Following the elapse of one year after entry of a decree or order reserving the final division of the property. *See Boulton v. Boulton*, 69 Haw. 1, 730 P.2d 338 (1986).

■ "The time limit specified in HRS § 580–56(d) pertains to the family court's jurisdiction to resolve the property division issue and to decide how the property of the parties will be distributed." *Richter*, 108 Hawai'i at 506–07, 122 P.3d at 286–87 (citation omitted). Expanding on that principle, we have held that HFCR Rule 60(b)(6) does not authorize the family court to reconsider its final division of the parties' property when the request for reconsideration is based upon a non-retroactive "mere" change in the relevant case law. *Hammon v. Monsef*, 8 Haw. App. 58, 64, 792 P.2d 311, 314 (1990); *see also Kremkow*, 7 Haw.App. at 289, 758 P.2d at 199 (HRS § 580–56(d) divests the family court of its HFCR Rule 60(b)(1) jurisdiction to divide the parties' property in each of the three situations identified *supra* n. 18).

HRS § 580–56(d) does not, however, resolve all issues relating to post-division property orders. It does not, for instance, pertain to enforcement of property division orders stated in a divorce decree that finally divided the parties' property. *Richter*, 108 Hawai'i at 507, 122 P.3d at 287; *see also Magoon v. Magoon*, 70 Haw. 605, 615–16, 780 P.2d 80, 86–87 (1989) (HRS § 580–56(d) does not divest the family court of jurisdiction to redivide marital property in response to an HFCR Rule 60(b) motion alleging fraud, misrepresentation, or other misconduct of the adverse party); *Greene v. Greene*, 8 Haw.App. 559, 567, 815 P.2d 28, 31 (1991) (HRS § 580–56(d) does not divest the family court of jurisdiction to decide HFCR Rule 60(b)(6) motions based upon a retroactive change in a relevant federal law); *Kano v. Kano*, 8 Haw.App. 172, 178, 799 P.2d 55, 58 (1990) (HRS § 580–56(d) does not divest the family court of jurisdiction to redivide marital property in response to an HFCR Rule 60(b)(3) motion alleging fraud, misrepresentation, or other misconduct).

The critical feature in these cases is the balance between the interest in finality of judgments advanced by HRS § 580–56(d) against the interest advanced in each case in

*Kremkow v. Kremkow*, 7 Haw.App. 286, 289, 758 P.2d 197, 199–200 (1988).

support of further proceedings. In *Kremkow*, for example, "we concluded that, when balancing the competing interests of the finality of judgments against a party's desire for relief from someone's mistake, inadvertence, surprise, or excusable neglect in obtaining the judgment or decree, HRS § 580–56(d) opts for finality." *Kano*, 8 Haw.App. at 179, 799 P.2d at 58. In *Kano*, on the other hand, "[w]e conclude[d] that, when balancing the competing interests of the finality of judgments and decrees against a nonmoving party's fraud, misrepresentation, or other misconduct in obtaining the judgment or decree, HRS § 580–56(d) opts against finality." *Id.*

In another timely post-decree property division case, *Magoon*, the Hawai'i Supreme Court balanced the interest in finality that is reflected in HRS § 580–56(d), as applied in *Boulton*, against the concern that a judgment or final order should manifest the merits of the case in the face of fraud or misrepresentation. The Court observed that:

> Were we to apply *Boulton v. Boulton* literally, we would have to affirm the family court. But we would then be ignoring the fact that the property division was accomplished within a year, albeit erroneously, and agreeing that the court was powerless to reconsider its decision in face of allegations in the substituted plaintiff's motion of fraud, misrepresentation, or other misconduct of the defendant because that year had elapsed.
>
> . . . .
>
> We cannot conclude [that] the legislature intended to divest our courts of power to do what the proper and orderly administration of justice demands by adopting the one-year limitation period in the absence of an express declaration to that effect.

*Magoon*, 70 Haw. 605, 616, 780 P.2d 80, 86. Similarly, here, were we to apply *Boulton* literally, the Family Court would have lost jurisdiction upon entry of the Decision and would have no jurisdiction upon remand.

With that in mind, we consider now the implications of the *Boulton* rule in the case of appellate review.

### 1. Final property division orders are appealable

HRS § 580–47(b) provides clearly that final property division orders are appealable: "An order as to the custody, management, and division of property and as to the payment of debts and the attorney's fees, costs and expenses incurred in the divorce shall be final and conclusive as to both parties *subject only to appeal as in civil cases.*" HAW.REV. STAT. § 580–47(b) (emphasis added). Reading HRS § 580–56(d) to bar the family court from correcting a timely post-decree property distribution order on remand from the appellate courts would deny the parties the benefit of appellate review to which HRS § 580–47 entitles them.

It is fundamental in statutory construction "that each part or section of a statute should be construed in connection with every other part or section so as to produce a harmonious whole." *In re Castro*, 44 Haw. 455, 458, 355 P.2d 46, 48 (1960). Statutes should be interpreted according to the legislature's intent and its overall meaning, and "not always according to the letter, and every part thereof must be viewed in connection with the whole so as to make all parts harmonize, if practicable, and give a sensible and intelligent effect to each." *Id.* (citing *Thomas v. Norton*, 8 Haw. 67 (Haw. Kingdom 1890)).

As a result, the appellate courts have read the one-year limitation contained in HRS § 580–56(d) narrowly and with an appreciation of the role that appellate review plays in the process. *See, e.g., Todd v. Todd*, 9 Haw. App. 214, 220, 832 P.2d 280, 283 (1992) (without tolling, "most appeals of the family court's decrees finally deciding [division and distribution issues] of divorce cases will result in the family court's permanent loss of jurisdiction over [division and distribution] before the appeal is decided").[19]

The context of this case is different from that in *Todd* in that a final property division

---

**19.** *Todd*'s recognition that the one-year provision in HRS § 580–56(d) is tolled during the pendency of any appeal has no bearing on the question that we consider here. *Todd* addressed a post-decree situation where the family court had

not issued a final property division order, but an appeal was taken before expiration of the one-year deadline. In the case under consideration, a final property division order has already is-

order has already issued, but the consequences of applying the one-year limitation from HRS § 580–56(d) would be analogous. In either case, "the family court would be powerless to take [any further] action" because the notice of appeal was filed after the parties' property was fully and finally divided. *See Todd*, 9 Haw.App. at 220, 832 P.2d at 283.

■■■■■■ "In the absence of an express declaration to the effect that HRS § 580–56(d) was intended to divest the family court of jurisdiction over property division upon remand of a timely property division order," *Magoon*, 70 Haw. at 616, 780 P.2d at 86, we observe no reason to so conclude. Appellate review is a statutorily recognized exception to the finality of a property-division decree. HAW.REV.STAT. § 580–47(b) (2006). For the same reason, we recognize it as an exception to *Boulton* and the general impact of HRS § 580–56(d). Since property-division proceedings are equitable in nature, *Cassiday v. Cassiday*, 68 Haw. 383, 388, 716 P.2d 1133, 1137 (1986) (citation omitted), since appellate review pre-dated the legislature's adoption of restrictions on post-decree property distribution under HRS § 580–56(d), and since the legislature did not thereafter amend HRS § 580–47 to reflect any perceived priority of HRS § 580–56(d), there is no reason for us to conclude that the legislature intended HRS § 580–56(d) to eliminate appellate review in the case of post-decree property distribution.

### 2. Balancing the interests favors appellate review

■■■■■ Determining the scope of HRS § 580–56(d) involves a balancing of competing interests. The purpose of the HRS § 580–56(d) restrictions was to prevent "delay in the resolution of property issues outstanding between the parties." *Boulton*, 69 Haw. at 6, 730 P.2d at 340–41. The relatively short time period also prevents "protract[ed] litigation." S. Stand. Comm. Rep. No. 813, in 1983 Senate Journal, at 1402. Counteracting the need for a speedy determination, however, is the right of the parties

to appeal a property-division order "as in other civil cases." HAW.REV.STAT. § 580–47(b).

It would appear illogical for the legislature to give the family court up to one year after a divorce to divide the parties' property, and give parties the right to appeal that decision, only to divest the family court of the ability to resolve the issues on remand.[20] The fact that the right to appellate review in HRS § 580–47(b) remains unamended in the face of HRS § 580–56(d) reflects, we believe, a legislative determination that we are to give effect to both provisions.

Analogous to our approach in *Greene*, we recognize here that the interest in properly deciding the merits of a case that underlies appellate review under HRS § 580–47(b) is in partial conflict with the interest in speed and finality advanced under HRS § 580–56(d). As a result, we agree that in divorce cases on remand from the appellate courts where the remand order "relates to the division of property, the additional impact of HRS § 580–56(d)'s express legislative policy in favor of the finality of judgments and decrees must be considered." *See Greene*, 8 Haw.App. at 569, 815 P.2d at 32.

■■■■■ The maximum period of time that HRS § 580–56(d) allows the family court to retain jurisdiction to divide the property is one year after a divorce decree that reserves the issue is entered. Consistent with the approach in *Greene*, we conclude then that it follows that upon remand and absent extraordinarily compelling circumstances, the family court shall retain jurisdiction for no more than one year after the date that the case is lodged again on remand in order to redivide and redistribute the parties' property to the extent required on remand. *See id.; see also* Haw. Fam. Ct. R. 41(e)(2) (relating to dismissal of actions). In light of the importance that the Legislature has identified in promptly completing property distribution cases, however, the family court should address the issues on remand as soon as possible.

While we apply the plain meaning of statutes whenever possible, we are bound by law to reject "[e]very construction which leads to

---

sued, thus divesting the family court of further jurisdiction over property division.

**20.** A contrary result could well give parties encouragement to stall for tactical reasons.

an absurdity[.]" HAW.REV.STAT. § 1–15(3) (2009). Authorizing the parties to a property-division order to appeal those decisions under HRS § 580–47(b), while denying the family court the jurisdiction to implement any appellate court directives resulting from the same appellate process under HRS § 580–56(d), reflects a construction of the latter statute that we are bound by law to reject. Consequently, we conclude that the Family Court has jurisdiction to redivide and redistribute the parties' property to the extent required on remand subject to the one-year post-remand deadline that we adopt above.

## IV. CONCLUSION

For the reasons discussed herein, we vacate Findings 12, 18 (to the extent that it pertains to the wasting of assets), 34, and 35 in the June 18, 2007 Decision. We further vacate Adjustment "A" and Distribution "i" in the Order. We affirm in all other respects and remand for further proceedings consistent with this opinion.